## STATE v. JERRY DALTON.

(Filed 20 December, 1919.)

**1. Homicide—Murder—Bystander—Accidental Killing.**

Where one man, engaged in an affray or difficulty with another, unintentionally kills a bystander, his act shall be interpreted in reference to his intent and conduct towards his adversary, and his criminal liability for the homicide or otherwise, and the degree of it, must be thereby determined.

**2. Same—Instructions—Appeal and Error—Reversible Error.**

Where there is evidence, on the trial for a homicide in the accidental killing of a bystander by the prisoner in a fight with another, that the prisoner's intent in such fight was either murder in the first degree, murder in the second degree, or that he acted in self-defense, this intent will govern the degree of the crime committed, or the acquittal, as to the killing of such bystander; and it is prejudicial and reversible error for the court to instruct the jury that they should find the prisoner guilty of murder in the first degree, if they found the intent was for murder in the second degree, and make the verdict to depend upon whether the prisoner's intent was to commit a felony, etc.

**3. Same—Statutes—Degrees of Murder—Common Law.**

Our statute, Rev., 3631, dividing murder into two degrees, one punishable by death and the other in the State's Prison, does not give any new definition of murder, but the same remains as it was at common law before the enactment; *i. e.,* the unlawful killing of a human being with malice aforethought, which malice may or may not arise from a personal ill-will or grudge, it being sufficient if there is an intentional killing without excuse or mitigating circumstances; and where there is an accidental killing of a bystander, it does not come within the classification of murder in the first degree merely because it occurred in the perpetration of, or effort to perpetrate a felony, but the prisoner's intent to kill his adversary must be shown beyond a reasonable doubt to have been willful, deliberate and premeditated, and to be determined upon the principles of the common law.

INDICTMENT for murder of Maude Williams, née Grant, tried before *Ray, J.,* and a jury, at August Term, 1919, of MACON. .

The prisoner was convicted of murder in the first degree. Judgment on the verdict, and prisoner appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*R. D. Sisk and J. N. Moody for defendant.*

HOKE, J. It was proved on the trial that on the afternoon of 10 November, 1918, in said county, the prisoner shot and killed the deceased, Maude Grant, and also killed Merrill Angel, who was with her at the time.

The facts in evidence on the part of the State tended to show that the prisoner, who had been drinking heavily for several weeks, and was angered because the deceased, spoken of in some of the testimony as "his girl," was with Merrill Angel; saw the two pass in the latter's automobile, and, as they returned shortly after, the prisoner signalled to the car, and when it came to a stop he approached it from the left side where Merrill Angel was at the wheel, Maude being on the same seat, and began a conversation with them, beginning in a low tone and growing louder as it proceeded; that Maude got out of the car on the opposite side from the prisoner, and as she walked towards the front the prisoner fired a pistol shot at her, and, as she was falling, immediately fired another, one of the shots inflicting a mortal wound, from which she presently died. The prisoner then fired a third shot through the windshield of the car, killing Merrill Angel. One of the bystanders, Will Stepp, testifying to the occurrence, in part said: "After a while I saw Jerry shaking Maude, and could hear her beg, 'Don't, Jerry! dont!' and when she was saying 'don't' Jerry was shaking her. He was on the side of the car that Angel was on, and reaching across Angel. Jim Barnett rode up to the back of the car and took hold of Jerry, and Jerry shoved him back, and in a second I saw Angel catch Jerry's hand. It seemed like he had something in his hand, and Jerry took a step backward, and by that time Maude jumped from the car and Jerry shot; Jerry jerked loose and Maude jumped from the car and Jerry shot; cannot tell what direction he fired. Dalton then took a step to the left to the forewheel of the car and fired again, and she fell. He then turned and fired through the windshield at Angel, and that was all I saw. I left and did not see anything more. Did not see Angel do anything except try to catch whatever Dalton had in his hand. Just as quick as Dalton jerked back from Angel he fired the first time." The prisoner, a witness in his own behalf, testified in part as follows: "That he approached the car and entered

into a conversation with the parties, and thought everything was friendly; that, in the course of the talk, Maude asked witness where he was going, and he replied he was going to Choga to get Hollifield's horse for the purpose of going over to the flats, and witness then asked: 'Won't you go with me?' and she said yes, because Merrill is going over to Franklin this evening. Whereupon Merrill said: 'No; you can't go. Before you shall go I will kill you both, God damn you!' and threw his hand to his pocket. That witness said 'Let's not do that,' and jumped back to draw his pistol, and it hung somehow at first and went off in witness's hand as he drew it to shoot Angel, etc. That his pistol fired three times." Further, witness testified: "That I killed Maude Grant accidentally; as I jerked my pistol out of my pocket, it fired and killed her." There was much other testimony on the issue, but the above is sufficient for a proper apprehension of the question chiefly involved in the prisoner's appeal, presented in an exception as follows: In one aspect of the evidence, the court instructed the jury:

"If you find beyond a reasonable doubt that he (the prisoner) came to the car, and that he was not assaulted by Angel, or an attempt made to take his life or do him great bodily harm, at the hands of Angel, but if he purposed in his mind to shoot Angel or do him great bodily harm, and that he did not have premeditation and deliberation when he undertook it, but did it under circumstances that if he had shot him and killed him, it would be murder in the second degree or manslaughter, and in carrying out that intention he had accidentally killed Maude, he would be guilty of murder in the first degree, because he would be doing a felonious act, or attempting a felonious act, when he accidentally killed the girl."

To this portion of the charge exception was duly taken, and, on the record, we are of opinion that this objection of the prisoner must be sustained.

In cases of this character, it is the generally accepted principle that, where one man, engaged in an affray or difficulty with another, unintentionally kills a bystander, his act shall be interpreted in reference to his intent and conduct towards his adversary, and criminal liability for the homicide, or otherwise, and the degree of it must be thereby determined. A very correct statement of the general principle is given in 13 R. C. L., title Homicide, sec. 50, pp. 745-46, as follows:

"The fact that the homicidal act was intended to compass the death of another person does not in any measure relieve the slayer of criminal responsibility. He is guilty or innocent exactly as though the fatal act had caused the death of the person intended to be killed. The intent is transferred to the person whose death has been caused. The result is that the slayer has been held guilty of murder or manslaughter or excusa-

ble homicide, according to the attendant circumstances. If the killing of the person intended to be hit would, under all the circumstances, have been excusable or justifiable on the theory of self-defense, then the unintended killing of a bystander by a random shot fired in the proper and prudent exercise of such self-defense, is also excusable or justifiable. And if the killing of the intended victim would have been reduced by the circumstances to murder in the second or third degree, or to manslaughter in any of the degrees, then the unintended and accidental killing of the bystander resulting from any act designed to take effect upon the intended victim would be likewise reduced to the same grade of offense as would have followed the death of the victim intended to be killed." And well considered decisions here and elsewhere and approved text-books are in full support of this statement of the doctrine. *S. v. Cole*, 132 N. C., 1069-1076; *S. v. Fulkerson et al.*, 61 N. C., 233; *Pender v. State*, 27 Fla., 370; *Commonwealth v. Breyessee*, 160 Pa. St., 451; 1 Wharton Criminal Law (11 ed.), sec. 500.

Applying the principle, the prisoner in this case is indicted for the willful murder of Maude Grant, one correct definition of the crime being the unlawful and intentional killing of another without excuse or mitigating circumstance. A witness in his own behalf, he testified, in effect, that he did not intentionally kill the deceased, but that he killed her accidentally in the effort to draw his pistol to defend himself from an assault by Merrill Angel. If the testimony should be accepted by the jury, his guilt or innocence must be determined by reference to his intent and conduct towards Merrill Angel and not otherwise. If, under the circumstances presented, the killing of Merrill Angel would have constituted murder in the second degree or manslaughter as to him, this would afford the correct measure of the prisoner's liability for the homicide for which he stands indicted, and it constitutes reversible error for the court to charge the jury, as it did in effect, that "if" the prisoner, without premeditation and deliberation, was engaged in an attempt to shoot Angel and under circumstances that if he had shot and killed him, it would be murder in the second degree or manslaughter, and, in carrying out his intention, he had accidentally killed Maude, he would be guilty of murder in the first degree, because he would be doing a felonious act when he accidentally killed the girl. His Honor may have given the charge excepted to under the impression that the same was justified and required by a proper consideration of an act dividing the crime of murder into two degrees, but, to our minds, the position does not correctly interpret the law. This statute, Rev., 3631, provides that "A murder, which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or any other kind of willful, deliberate, and premeditated killing, or which shall be committed in perpetration,

or attempt to perpetrate, any arson, rape, robbery, burglary, or other felony, shall be murder in the first degree, and punished with death. All other kinds of murder shall be murder in the second degree, and punished by imprisonment in the State's Prison, not less than 2, nor more than 30 years." In *S. v. Banks,* 143 N. C., 652-656, it was earnestly contended in behalf of the defendant, convicted of murder in the first degree under the statute, that such a conviction could only be sustained where the "unlawful killing was done from personal ill-will or grudge between the parties," and the Court, in disapproving the position, said:

"There has been no change wrought in this respect by the statute dividing the crime of murder into two degrees, Rev., 3631, as to the element of malice which must exist to make out the crime.

"Both before and since the statute, murder is the unlawful killing of another with malice aforethought. See Clark's Criminal Law, p. 187. This malice may arise from personal ill-will or grudge, but it may also be said to exist whenever there has been a wrongful and intentional killing of another without lawful excuse or mitigating circumstances. The statute does not undertake to give any new definition of murder, but classes the different kinds of murder as they existed at common law, and which were, before the statute, all included in one and the same degree.

"Thus, all murder done by means of poison, lying in wait, etc., or by any other kind of willful, deliberate, or premeditated killing, or murder done in the effort to perpetrate a felony, shall be murder in the first degree, and punished with death. All other kinds of murder shall be deemed murder in the second degree, and punished by imprisonment in the State's prison. But the constituent definition of murder remains as it was, and in neither degree is it necessarily required that the unlawful killing shall be from personal ill-will or grudge."

From this authoritative construction, it appears that the statute does not, and does not intend, to give any new definition of murder, but only classifies the crime, dividing the same into the two degrees; making all murder done by lying in wait, etc., or any other kind of willful, deliberate, or premeditated killing, and all murder done in the perpetration or effort to perpetrate any of the graver felonies, murder in the first degree. And from this it follows that an accidental killing does not come within the classification of murder in the first degree merely because it occurred in the perpetration of or effort to perpetrate felony, but only when the killing amounted to murder done in such effort, and on the facts of this record, and assuming this killing of Maude Grant to have been accidental as the prisoner testified, the only way it could be made to constitute murder in the first degree is for the State to establish beyond a reasonable doubt that such killing occurred while the perpetrator was presently engaged in the willful, deliberate, and premeditated effort and

the intent to kill and murder Merrill Angel, this to be determined under the principles of the common law as approved and illustrated in the decisions heretofore cited, and others of like import. There is high authority for the position that the accidental or unintentional killing of a bystander may never amount to a graver crime than murder in the second degree. *Thomas v. State,* 53 Texas Criminal Appeals, p. 272, and other cases, but we are of opinion that the contrary is the sounder view, and more in accord with our own decisions on the subject, to the effect that such a killing may be held murder in the first degree when it occurs, as stated, while the perpetrator is presently engaged in the willful, deliberate, and premeditated effort to kill and murder another. See *S. v. Cole,* 132 N. C., at p. 1076; 1 Wharton Criminal Law (11 ed.), sec. 508; 13 R. C. L., 774-75-76-77.

There are cases apparently in support of his Honor's charge, and which hold that any killing done in the perpetration of or effort to perpetrate the specified felonies will constitute murder in the first degree, but so far as examined, these rulings were made on statutes differing from ours, and which permit and perhaps require a different interpretation.

In discussing this question, we have referred throughout to the defendant's testimony only because it is in his evidence that the exception is presented, and we deem it not improper to say that, on perusal of the record, there is evidence on the part of the State which requires that the question of murder in the first degree be submitted as an independent proposition, and irrespective of the prisoner's conduct in reference to the killing or his attempt to kill Merrill Angel.

For the error indicated, the prisoner is entitled to have his cause tried before another jury, and it is so ordered.

New trial.