STATE OF NORTH CAROLINA v. ROY LEE CATES

No. 14

(Filed 11 November 1977)

**1. Homicide § 21.5 — first degree murder — sufficiency of evidence — no evidence of lesser included offenses**

Evidence in a first degree murder prosecution was sufficient to permit the jury to find that defendant unlawfully, with malice, premeditation and deliberation, killed the deceased mistakenly thinking at the time that he was killing someone else, and the trial court did not err in failing to instruct on lesser included offenses where the evidence tended to show that defendant, after hearing that his friend had been robbed, came from Durham to Raleigh to get the details of the robbery; defendant was armed with three pistols; defendant learned that the robbers had been to his friend's house earlier with one Christmas; defendant requested the friend's boyfriend to accompany him to Christmas' apartment; defendant gave the boyfriend one of the pistols; when they arrived at the apartment complex where Christmas lived, the boyfriend told defendant that Christmas lived in "the one on the end"; defendant, armed with an automatic pistol, went toward the front of the apartment and the boyfriend went to the back; defendant was in fact standing in front of an apartment which was occupied by one other than Christmas; deceased opened his door and defendant shot him three or four times; and immediately after firing the fatal shots, defendant went to his car and left the scene at a high rate of speed.

**2. Criminal Law § 34.4 — defendant's guilt of another offense — admissibility of evidence**

The trial court in a first degree murder prosecution did not err in allowing a witness to testify as to defendant's pistol whipping him in 1971 for his failure to pay defendant for narcotics he was to sell for defendant, since the purpose of that testimony was not simply to prejudice the defendant or to prove that he was a man of bad character; rather, its purpose was to show that the witness accompanied defendant to the crime scene due to his fear, and the testimony tended to rebut the inference raised on cross-examination that the witness's motive for accompanying defendant was revenge, and the further inference that the witness himself had committed the crime.

**3. Criminal Law § 60.3 — expert fingerprint evidence — admissibility**

A witness's opinion concerning the freshness of fingerprints at the crime scene was properly admitted, though the trial judge made no specific finding that the witness was an expert in fingerprint processing and identification, where the record indicated that such a finding could have been made; moreover, defendant made no objection to the questions which elicited this testimony and no motion to strike the witness's answer.

**4. Criminal Law § 113 — jury instruction on evidence — no error**

The trial court's instruction which stated that only testimony and exhibits entered into evidence constituted the evidence to be considered by the jury

and that arguments by counsel or recapitulation of the evidence by the court should not be considered as evidence was proper; moreover, the court correctly instructed the jury that it was their duty to find the facts from the evidence offered after determining the credibility of the witnesses.

**5. Criminal Law § 114.3— jury instructions—no expression of opinion**

The trial court's statement, made while instructing the jury, that "There will be, you will be glad to know, no effort to restate all of the evidence" was not prejudicial to defendant but merely informed the jury that it was not necessary for the judge to go over all the evidence.

**6. Criminal Law § 99— expression of regret by court—no error**

In a first degree murder prosecution where defendant shot and killed a Nigerian student, mistakenly thinking he was someone else, defendant was not prejudiced by the trial court's remarks, made after the verdict had been returned and judgment pronounced, expressing regret for the useless and senseless killing of an innocent young man.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *McLelland, J.,* at the 15 November 1976 Session of WAKE Superior Court.

Upon an indictment, proper in form, defendant was charged with the murder of Donald C. Obi-Obasi. He was tried and convicted of murder in the first degree, and sentenced to life imprisonment.

The evidence for the State may be summarized as follows: Donald Jeffrey Crews testified that in June 1976 he was living at the home of Carolyn Conyers at 1400-F Quail Ridge Road in Raleigh. Ms. Conyers sold heroin supplied to her by the defendant, and Crews had made some sales for her. At 4:00 a.m. on the morning of 16 June 1976, one Johnny Christmas brought two unidentified black males to the home of Ms. Conyers. The men wanted heroin but said they had no money. Crews told the men that he worked for Ms. Conyers, and that she could not afford to give them heroin without payment. The men searched about the room while Crews went outside. Crews came back inside with one packet of heroin, but refused to give them the bag until they paid. The men went outside, searched around the house and yard for ten minutes, and then left.

At 7:00 a.m. that same morning, the two unidentified black males returned to the apartment of Ms. Conyers, without Johnny Christmas. At this time, Ms. Conyers was in the shower and her

twelve-year-old son was in bed. Jeffrey Crews answered the door, whereupon the two men held a pistol to his face and demanded entrance. The two men entered the apartment, tied up Crews, Conyers and her son, and took heroin, cash and other property from the premises.

After their departure, Ms. Conyers freed herself and telephoned the defendant at his home in Durham, informing him of the robbery. Within an hour or two thereafter, defendant arrived at Conyers' apartment in Raleigh. He talked with her about the robbery and asked her or Crews where Johnny Christmas lived. Defendant asked Crews if he would show him where Christmas lived, and Crews agreed to do so.

Carolyn Conyers corroborated Jeffrey Crews' testimony up to this point, and further testified regarding her heroin dealings with the defendant.

Crews further testified that he and the defendant got into defendant's 1975 red and white Oldsmobile and drove to Washington Terrace Apartments in Raleigh. En route, defendant handed Crews a .38-caliber revolver. Crews testified that there were two other guns in the car. Defendant parked to the side of the apartment complex and asked Crews in which apartment Christmas lived. Crews testified that he told defendant, without pointing, that Christmas lived in "the one on the end." Defendant took a pistol and walked toward the front of the duplex apartment while Crews walked around to cover the back door of the apartment. Johnny Christmas lived in Apartment F-15. Crews testified that he stationed himself behind the door of the adjoining apartment, number F-14. He heard a gun fire three or four times and heard bullets going over his head. Crews testified that he then ran around to the front of the apartments and saw a black male lying on the lawn in front of Apartment F-14. Crews further testified that he kicked the man on the shoulder and cursed him, thinking he was one of the men who had robbed Ms. Conyers' apartment. He then ran and jumped into the car, where defendant was waiting, and the defendant drove away.

The victim was Donald Obi-Obasi of Nigeria, a student at Shaw University. He resided with Lucky Ehigianusoe, also a Nigerian student, at F-14 Washington Terrace, next door to Johnny Christmas. Ehigianusoe testified that he came in from his

job at the Raleigh News and Observer at 6:00 a.m. that morning and went to bed. At about 10:00 a.m. he heard several shots and Obi-Obasi staggered into his room bleeding. Obi-Obasi then left the room and went outside while Ehigianusoe ran out the back door. The victim's roommate testified that Obi-Obasi did not use drugs, drink or smoke, and that he had never known him to possess any sort of drugs.

Other testimony showed that Obi-Obasi had worked the night shift at Health Care Center of Raleigh, and that he had been at work at the time of the robbery.

Five witnesses for the State, all residents of Washington Terrace Apartments, testified that on the morning of 16 June they each heard several shots. Linda Nelson, Trudy Hawkins and Melvin Plummer said they looked out their windows to see a black male run to and enter a red automobile. They testified that moments later Obi-Obasi staggered out of his apartment and fell onto the lawn. The five witnesses all testified that they saw a black male come from behind Apartment F-14. This man walked up to the victim and kicked him several times in the head. He then jumped into a red car driven by another black male, and the car sped away. Katherine Wright, who lived in F-15 with Johnny Christmas, testified that she looked out her window and saw Jeff Crews, whom she knew, kicking Obi-Obasi in the head.

Officer M. W. Brown of the Raleigh Police Department testified that he arrived on the scene at 10:15 a.m. and that the victim took his last breath a few minutes later. The autopsy report showed that his death was caused by the bullet wounds inflicted by defendant.

Other evidence offered by the State will be referred to in the opinion.

The defendant offered no evidence.

*Attorney General Rufus L. Edmisten and Assistant Attorney General James E. Magner, Jr. for the State.*

*Norman E. Williams and Kenneth B. Oettinger for defendant appellant.*

MOORE, Justice.

The trial judge instructed the jury that they could return one of three verdicts: murder in the first degree, murder in the second degree or not guilty. Defendant contends the trial judge should have submitted the lesser included offenses of voluntary manslaughter and involuntary manslaughter.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296 (1976); *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971); *State v. Reams,* 277 N.C. 391, 178 S.E. 2d 65 (1970), *cert. denied,* 404 U.S. 840, 30 L.Ed. 2d 74, 92 S.Ct. 133 (1971); G.S. 14-17. Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation. *State v. Duboise, supra; State v. Winford,* 279 N.C. 58, 181 S.E. 2d 423 (1971). Voluntary manslaughter is the unlawful killing of a human being without malice, express or implied, and without premeditation or deliberation. *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971); *State v. Duboise, supra.* Involuntary manslaughter is the unintentional killing of a human being without malice, premeditation or deliberation which results from the performance of an unlawful act not amounting to a felony or not naturally dangerous to human life; or from the performance of a lawful act in a culpably negligent way; or from the culpable omission to perform some legal duty. *State v. Rummage, supra; State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485 (1959).

Premeditation may be defined as thought beforehand for some length of time. " 'Deliberation means . . . an intention to kill, executed by the defendant in a cool state of blood, in furtherance of a fixed design . . . or to accomplish some unlawful purpose. . . .' *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769." *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970). *See State v. Davis, supra.* Ordinarily, premeditation and deliberation are not susceptible of proof by direct evidence, and therefore must usually be proved by circumstantial evidence. Among the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are: (1) the want of provocation on the part of deceased; (2) the conduct of defendant before and after the killing; (3) the vicious and brutal manner of the killing, and (4) the

number of blows inflicted or shots fired. *State v. Sparks*, 285 N.C. 631, 207 S.E. 2d 712 (1974); *State v. Perry, supra.*

Malice is defined as ". . . not only hatred, ill-will, or spite, as it is ordinarily understood—to be sure that is malice—but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification. [Citation omitted.]" *State v. Benson*, 183 N.C. 795, 799, 111 S.E. 869, 871 (1922). *See State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969).

Where it is permissible under a bill of indictment to convict defendant of a lesser degree of the crime charged, and there is evidence to support a milder verdict, defendant is entitled to have the different permissible verdicts arising on the evidence presented to the jury under proper instructions. *State v. Riera*, 276 N.C. 361, 172 S.E. 2d 535 (1970); *State v. Keaton*, 206 N.C. 682, 175 S.E. 296 (1934). Where all the evidence, however, tends to show that the crime charged in the indictment was committed and there is no evidence tending to show commission of a crime of less degree, this principle does not apply, and the court correctly should refuse to charge on the unsupported lesser degree. *State v. Sparks, supra; State v. Duboise, supra; State v. Manning*, 221 N.C. 70, 18 S.E. 2d 821 (1942); *State v. Sawyer*, 224 N.C. 61, 29 S.E. 2d 34 (1944).

In present case, if the defendant resolved in his mind a fixed purpose to kill Johnny Christmas and thereafter, because of that previously formed intent and not because of any legal provocation on the part of Christmas, deliberately and intentionally shot and killed him, the three essential elements of murder in the first degree—premeditation, deliberation and malice—would concur.

[1] Here, all the evidence tends to show an unlawful killing with malice and with premeditation and deliberation. After hearing that Carolyn Conyers had been robbed, defendant, armed with three pistols, came from Durham to Raleigh to get the details of the robbery. When he learned that Johnny Christmas had accompanied the two robbers on their first visit to Carolyn Conyers', he inquired as to where Christmas lived and requested Jeff Crews to accompany him and show him the way. Crews agreed to do so, and on the way there, defendant gave Crews a .38-caliber pistol. When they arrived at the apartment complex, Crews told defend-

ant that Christmas lived in "the one on the end." Defendant, armed with an automatic pistol, then went toward the front of the duplex apartment and Crews went to the back. According to defendant's statement to Crews, deceased opened the door, but, upon seeing defendant with a pistol, tried to close it. Defendant then "let [the victim] have it three or four times in the gut. It was a screen door and that wooden door was open." Immediately after firing the fatal shots, defendant went to his automobile and left the scene at a high rate of speed.

In our opinion, this evidence is sufficient to permit the jury to find that defendant unlawfully, with malice, premeditation and deliberation, killed the deceased mistakenly thinking at the time that he was killing Johnny Christmas. The fact that defendant killed Obi-Obasi when he intended to kill Johnny Christmas has the same legal effect as if he had killed Christmas. If he feloniously, with malice, premeditation and deliberation, intended to kill Johnny Christmas and killed Obi-Obasi instead, he would be guilty of first degree murder just as he would have been had he killed Christmas.

In *State v. Heller*, 231 N.C. 67, 55 S.E. 2d 800 (1949), defendant was charged with killing his wife. His testimony was to the effect that he did not intend to shoot his wife but intended to kill the person he thought to be her paramour, whom he believed to be in the house. This Court approved an instruction that if defendant feloniously and with premeditation and deliberation intended to kill another person and killed his wife instead, he would be guilty of murder in the first degree. *See State v. Williams*, 246 N.C. 688, 99 S.E. 2d 919 (1957); *State v. Sheffield*, 206 N.C. 374, 174 S.E. 105 (1934); *State v. West*, 152 N.C. 832, 68 S.E. 14 (1910).

As stated by Justice Branch in *State v. Wynn*, 278 N.C. 513, 180 S.E. 2d 135 (1971), ". . . It has been aptly stated that 'The malice or intent follows the bullet.' 40 Am. Jur., Homicide, § 11, p. 302; *State v. Rogers*, 273 N.C. 330, 159 S.E. 2d 900; *State v. Dalton*, 178 N.C. 779, 101 S.E. 548."

Under the facts in the case at bar, there was no evidence of voluntary or involuntary manslaughter, and the trial court correctly refused to submit these lesser included offenses to the jury. This assignment is overruled.

[2] On redirect examination by the prosecutor, State's witness Crews was allowed to testify, over defendant's objection, that he had prior drug dealings with the defendant in 1971 or 1972; that at that time he had bought some bad drugs from defendant for resale and had attempted to return the drugs to defendant through a middle man; that defendant had pistol-whipped the middle man for failure to return the drugs; and that defendant demanded payment for the missing drugs from Crews, and had hit Crews in the head with a pistol and forced him at gunpoint to obtain money to pay for the drugs.

Defendant did not testify in his own behalf or otherwise put his character into issue. He argues that the admission of this testimony as to his prior misconduct is a violation of the general rule that the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense, and furthermore that the testimony does not fall within one of the eight exceptions to this general rule listed in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). But the listing of "well recognized exceptions" in *McClain* does not pretend to be exclusive. Rather, as was stated in *McClain*, ". . . The acid test [of admissibility of testimony of prior misconduct] is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. . . ." 240 N.C. at 177, quoting *State v. Gregory*, 191 S.C. 212, 4 S.E. 2d 1. The general rule in this State has been aptly stated as follows: ". . . Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." 1 Stansbury, N.C. Evidence § 91 (Brandis rev. 1973); *State v. McClain*, 282 N.C. 357, 193 S.E. 2d 108 (1972); *State v. Shutt*, 279 N.C. 689, 185 S.E. 2d 206 (1971). *See also State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973); *State v. Felton*, 283 N.C. 368, 196 S.E. 2d 239 (1973).

On cross-examination, defendant's attorney subjected State's witness Crews to a searching interrogation regarding his presence and participation in the crime, and attempted to establish the witness's motive for committing the murder himself, thereby exculpating the defendant. The witness was subjected to

extensive questioning concerning his reasons for going to Johnny Christmas's apartment with the defendant. He admitted that he went over there, in part, in order to show Ms. Conyers that he was a man. He denied that he was mad at the men who had robbed him and Ms. Conyers, and he denied bearing a grudge toward them and a desire to get even. The witness insisted that he mainly went with defendant due to his fear of defendant and his suspicion that defendant would accuse him of collaborating with the thieves if he stayed behind.

On redirect examination, Crews testified as to defendant's pistol-whipping him in 1971 for his failure to pay defendant for narcotics he was to sell for defendant. The purpose of this testimony was not simply to prejudice the defendant, or to prove that he was a man of bad character. Rather, its purpose was to show that Crews went with Cates due to his fear, and not out of motive of revenge. This fear was genuine, based upon his past experiences with defendant's manner of dealing with those whom he suspected had deprived him of the fruits of his trade. Such evidence tends to rebut the inference raised on cross-examination that the witness's motive for accompanying the defendant was revenge, and the further inference that the witness himself had committed the crime.

"On redirect examination a witness may properly be interrogated as to facts, circumstances, or any matter tending to refute, weaken, or remove inferences, impressions, implications, or suggestions which might result from testimony or inquiries on cross-examination, although the facts brought out may be prejudicial to the other party." 98 C.J.S., Witnesses § 419(c), pp. 223-24. In *State v. Patterson*, 284 N.C. 190, 200 S.E. 2d 16 (1973), where defendant elicited testimony from a witness on cross-examination tending to show her bias, this Court held it proper for that witness to testify on redirect that the reason she disliked defendant was due to the fact that he had raped her. In *Patterson*, this Court quoted and reaffirmed the law as stated in *State v. Glenn*, 95 N.C. 677 (1886), where the Court said: ". . . A party cannot be allowed to impeach a witness on the cross-examination by calling out evidence culpatory of himself and then stop, leaving the opposing party without opportunity to have the witness explain his conduct, and thus place it in an unobjectionable light if he can. In such case the opposing party has the right to such ex-

planation, even though it may affect adversely the party who cross-examined. Upon the examination in chief, the evidence may not be competent, but the cross-examination may make it so." *See State v. Sawyer*, 224 N.C. 61, 29 S.E. 2d 34 (1944); *State v. Orrell*, 75 N.C. 317 (1876).

In the present case, Crews' testimony on redirect as to prior acts of misconduct by defendant was clearly relevant in that it showed the witness's motive for accompanying defendant to the scene of the crime, after his motives had been called into question on cross-examination. The testimony tended to rebut and remove the inference that the witness himself may have perpetrated the crime. We hold therefore that this evidence of prior misconduct by defendant was admissible.

[3] Defendant's third assignment of error is based on the contention that the trial court erred in admitting the testimony of State's witness H. L. Battle, a technician with the City-County Identification Bureau, concerning the freshness of the fingerprints he lifted at the crime scene. Defendant argues that the witness did not explain the technical basis for his opinion or give a sound reason for the opinion.

The record shows no objection to the questions which elicited this testimony and no motion to strike the witness's answer. ". . . An objection to the admission of evidence must be made at the time it is offered. Objection to incompetent evidence should be interposed at the time the question intended to elicit it is asked, and a motion to strike an incompetent answer should be made when the answer is given. An objection not made in apt time is waived. [Citations omitted.] . . ." *State v. Davis* and *State v. Fish*, 284 N.C. 701, 713, 202 S.E. 2d 770, 778 (1974). *See also* North Carolina Rules of Appellate Procedure, Rule 10(b)(1); 1 Strong, N.C. Index 3d, Appeal and Error § 30, p. 258. ". . . It is too late after trial to make exceptions to the evidence. [Citations omitted.]" *State v. Lowery*, 286 N.C. 698, 707, 213 S.E. 2d 255, 261 (1975), quoting from *State v. Howell*, 239 N.C. 78, 79 S.E. 2d 235 (1953).

In any case, the testimony by this witness was competent. His testimony established that he was trained and experienced in the processing, lifting and identification of latent fingerprints. Though the trial judge made no specific finding that this witness

was an expert in fingerprint processing and identification, the record indicates that such a finding could have been made. In such cases it will be assumed that the judge found the witness to be an expert. *State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972). This being the case, the witness's opinion testimony as to the freshness of the fingerprints found at the scene of the crime was properly admitted.

[4] During his charge to the jury, the trial judge stated:

> "Evidence is the testimony witnesses gave from the stand during the course of the trial and such exhibits as were admitted into evidence to illustrate the testimony of the various witnesses. Nothing else is evidence. The statements by counsel in the course of their argument as to what the evidence is is not evidence. Neither is the summary the Court will later give you as to what the evidence tends to show to be regarded by you as evidence.
>
> "Your duty as jurors is to remember as best you can— and experience has shown that a 12-headed jury remembers quite well— all of the evidence and to weigh and consider all of the evidence in determining whether or not the State has borne the burden of proof mentioned; that is, proof of guilt beyond a reasonable doubt."

Defendant excepted to and assigns this portion of the charge as error. We see no merit to this assignment. The trial judge was simply telling the jury what to consider as evidence in arriving at its verdict.

Following the above quoted portion of the charge, the trial judge, without exception, said:

> "You are the sole judges of the credibility, the believability, of the witnesses that you have heard, and you must decide for yourselves whether you will believe the testimony of any witness. In making that determination, I suggest that you apply tests of truthfulness which you ordinarily use. Such tests may include the opportunity the witness had to see, hear, know or remember the matters about which he or she testified, the manner and appearance of the witness on the stand as testimony was given, the apparent understanding and fairness of the witness, whether

the witness's testimony is consistent with other testimony that you believe, whether the witness's testimony is reasonable, and whether the witness has any interest in the outcome of the trial or has any other bias or prejudice that would have a bearing upon truthfulness."

Clearly, the jury here was instructed that it was their duty to find the facts from the evidence offered after determining the credibility of the witnesses.

Defendant insists that there is a conflict between those portions of the charge set out above. We fail to perceive a conflict. This assignment is overruled.

[5] The trial judge further instructed the jury:

"The law requires the presiding judge, ladies and gentlemen, to declare and explain to you the law arising on the evidence and to state the evidence to the extent that may be necessary to enable you to apply the law to the evidence and to the facts that you find from that evidence to exist. My statement of the evidence will be in summary form. There will be, you will be glad to know, no effort to restate all of the evidence."

Defendant contends that by this portion of the charge the trial judge expressed an opinion in favor of the State, contrary to G.S. 1-180. "The recapitulation of all the evidence is not required under G.S. 1-180, and nothing more is required than a clear instruction which applies the law to the evidence and gives the position taken by the parties as to the essential feature of the case." *State v. Thompson*, 226 N.C. 651, 39 S.E. 2d 823 (1946). There is no contention that the trial judge failed to comply with this statutory requirement in the present case. Rather, the defendant contends that the judge's remark, "you will be glad to know," was prejudicial to defendant. There is no merit to this argument. The trial judge was simply stating that it was not necessary for him to go over all the evidence. We see no expression of opinion prejudicial to defendant.

[6] Under this same assignment, defendant argues that the trial judge clearly revealed his feelings against defendant by the following statement:

"I deem it not inappropriate, though somewhat presumptuous, to express for the State of North Carolina and its people our sorrow for the pain and death inflicted in our State upon Donald Obi-Obasi and our apologies to his kin and the people of Nigeria for the loss to them of the leadership of one who had undertaken to prepare himself through education in our land for such leadership."

Suffice it to say that this statement was made after the verdict had been returned by the jury and after judgment of the court had been pronounced. It was simply an expression of regret by the trial judge for the useless and senseless killing of an innocent young man.

We have examined the entire record and find no prejudicial error. Hence, the verdict and judgment will be upheld.

No error.