RICHARD LEE HOLIDAY v. LAWRENCE M. CUTCHIN, M.D.

No. 853SC728

(Filed 2 September 1986)

1. **Physicians, Surgeons and Allied Professions § 15.1— medical malpractice—failure to allow redirect examination of expert—no prejudice**

   There was no prejudice in a medical malpractice action from the court's failure to allow plaintiff's expert to testify on redirect examination that he knew of no circumstances that could have made it unnecessary for defendant to check the pulses in plaintiff's legs where the doctor had made it very plain to the jury that in his opinion it was necessary to check the pulses in a painful leg before ever deciding that the cause was a muscle strain.

**2. Physicians, Surgeons and Allied Professions § 14— medical malpractice — instruction on burden of proof — lapsus linguae**

 There was no error in a medical malpractice action in which the trial court instructed the jury that plaintiff's burden was beyond the greater weight of the evidence where plaintiff's burden was correctly stated several times and the court acknowledged its one error and correctly reinstructed the jury thereon to plaintiff's probable advantage.

APPEAL by plaintiff from *Tillery, Judge.* Judgment entered 25 January 1985 in Superior Court, PITT County. Heard in the Court of Appeals 4 December 1985.

This medical negligence case, based on the amputation of plaintiff's foot following an injury that defendant diagnosed and treated as muscle strain, has been tried twice and both times the jury returned verdict for defendant. After the first verdict a new trial was ordered by this Court, *Holiday v. Cutchin*, 63 N.C. App. 369, 305 S.E. 2d 45 (1983), and our Supreme Court affirmed, *Holiday v. Cutchin*, 311 N.C. 277, 316 S.E. 2d 55 (1984).

The facts material to plaintiff's claim are essentially undisputed: On 1 April 1979 defendant, a board certified specialist in internal medicine then on rotating duty in the emergency room of the Edgecombe County General Hospital, examined and treated plaintiff, who was brought in crying and complaining of intense pain in his left leg and foot. Plaintiff said that the pain started when he injured his foot two days earlier playing basketball and had increased since then. Defendant's examination revealed that plaintiff's leg had a full range of motion and X-rays indicated that there was no fracture. Defendant diagnosed the injury as a muscle strain and prescribed heat treatment, rest and a pain killer; he did not consider that plaintiff's signs and symptoms could indicate a vascular or circulation problem and he did not check any of the peripheral pulses in either leg. Two days later when plaintiff returned to the emergency room still complaining of pain in the same leg and foot he was examined by Dr. Kelsh, who found that the leg had no pulse and was pale and cold to the touch. Immediately recognizing that blood was not circulating in plaintiff's lower leg and foot Dr. Kelsh had him rushed to Pitt County Memorial Hospital, where a blood clot was removed from one of the arteries in plaintiff's leg. The surgery did not restore the circulation in the foot and lower leg, though, as much of it was

already dead or dying and an amputation below the knee was done. It is now known that plaintiff had, and has long had, a condition that unduly speeds the clotting of blood known as Anti-Thrombin III deficiency. Until 1981 medical authorities thought that this condition caused clotting only in veins where the blood moves slower and with less force, but since then it has been established that it sometimes, though rarely, causes clotting in arteries also. Because of this condition plaintiff has had recurring circulation problems ever since his first hospitalization. Several different blood clots have been removed from both legs and an additional part of the left leg was amputated, but his right leg is still intact and useable because the clots in it were promptly diagnosed and removed.

During the trial now being reviewed: Three doctors called by the plaintiff testified from hypothetical facts largely as stated above that Dr. Cutchin's failure to check the pulses in plaintiff's painful leg violated the applicable standard of care; if that routine, simple step had been taken defendant would have recognized that plaintiff's difficulty was not a muscle strain but a blocked artery which could have been cleared by removing the clot before the circulation loss seriously affected the foot and leg; the heat treatments defendant prescribed for the painful foot speeded up the destructive process that was started by the blocked artery. Seven doctors called by the defendant testified hypothetically that defendant's examination and treatment of plaintiff was proper in all respects, and he had no reason to suppose that plaintiff's injury was other than a muscle strain.

*Davis & Atkins, by Paul De Vendel Davis, and McLeod & Senter, by Joe McLeod and William L. Senter, for plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr., Nigle B. Barrow, Jr. and Donald H. Tucker, Jr., for defendant appellee.*

PHILLIPS, Judge.

[1] The plaintiff's request for a third trial is based mainly upon the court's refusal to permit his chief expert witness, Dr. Rob, who has been in charge of plaintiff's treatment since Dr. Kelsh sent him to Pitt Memorial Hospital, to testify on redirect exami-

nation, in effect, that he knew of no circumstances that could have made it unnecessary for defendant to check the pulses in plaintiff's legs. The central theory of plaintiff's case is that impaired circulation was obviously a possible cause of the intense pain in plaintiff's foot and lower leg when defendant accepted him as a patient; and his failure to check that possibility by simply feeling the pulses in plaintiff's leg was negligence that proximately caused the loss of the leg. Dr. Rob's testimony on direct examination strongly supported all aspects of this theory; but the effect of this testimony was undermined to some extent by defendant eliciting on cross-examination that: Because of plaintiff's Anti-Thrombin III deficiency the blood clot could have developed after defendant examined him and that while the emergency room record stated that plaintiff was injured playing basketball two days earlier, the Pitt Memorial record stated that the injury occurred on the same day plaintiff first went to the emergency room. These elicitations — which tended to show that nature, rather than the negligence of Dr. Cutchin, caused the loss of plaintiff's leg and that one of the premises for Dr. Rob's opinions did not exist — were new matters introduced into evidence, which also tended to devalue Dr. Rob's opinions, and plaintiff had a right to address them on redirect examination. *State v. Cates*, 293 N.C. 462, 238 S.E. 2d 465 (1977); 98 C.J.S. *Witnesses* Sec. 419(c), p. 223 (1957). Plaintiff's proffered response, that no excuse had been or could be offered that would justify defendant's failure to determine whether the blood was circulating in the painful leg, was entirely proper and the court erred in not permitting the testimony. Even so, in our opinion the error was not prejudicial because Dr. Rob had made it very plain to the jury that in his opinion it was necessary to check the pulses in a painful leg before ever deciding that the cause was muscle strain. He so testified several times on direct examination and immediately before and after the two excluded questions he testified to somewhat the same thing. In answering other questions he said, in substance, that changing the sex or age of the patient or the day that he played basketball and was hurt "would have made no difference" so far as checking the pulses in the leg was concerned, as the important thing was that there was "a man sitting there crying and otherwise complaining of pain in his leg." Thus, while the testimony excluded should have been received, in our opinion it would have added nothing material to plaintiff's case. Plaintiff's theory of recovery, founded

it would seem as much on common sense as medical knowledge and experience—that when a limb is in pain an attending doctor should check the circulation, a simple, cost free process that can be accomplished by simply touching the patient, which the defendant did in ascertaining that the motions of the limb were not restricted—could not have been any clearer or more persuasive to the jury than it already was. And a jury for the second time not having been persuaded by plaintiff's evidence, clear and plausible though it was, there the matter should rest.

[2] The court also erred in instructing the jury as to plaintiff's burden of proof, as plaintiff maintains, but timely correction was made and plaintiff was not harmed thereby in our opinion. Plaintiff's burden was correctly stated several times but one time it was inadvertently misstated as being "beyond the greater weight of the evidence." After this *lapsus linguae* was called to the court's attention at the end of the charge the court acknowledged the error and correctly reinstructed the jury thereon to plaintiff's probable advantage, if anything. But none of plaintiff's several other assignments, which show neither error nor prejudice, require discussion, as the incidents that they are based upon were remote to and could not have affected the jury's determination that plaintiff was not injured by the negligence of the defendant.

No error.

Judges WHICHARD and JOHNSON concur.