DILLON, Judge.
*633 Defendant appeals his convictions for first-degree felony murder and for assault with a deadly weapon with intent to kill inflicting serious injury (AWDWIKISI). For the following reasons we reverse the judgments and remand as follows: (1) with respect to the AWDWIKISI conviction, Defendant is entitled to a new trial; and (2) with respect to the first-degree felony murder conviction, the trial court shall vacate that judgment and enter judgment convicting Defendant of second-degree murder.
I. Background
Defendant was convicted of assault and murder for shooting two victims, killing one of them, during a drug deal gone bad.
*634 On 2 February 2015, Defendant was at Jon's[1] home to buy marijuana. Jon's girlfriend, Beth, was also there. The State's evidence tended to show that Defendant shot Jon and Beth while trying to rob Jon.
Defendant, however, testified as follows: Defendant went to buy marijuana from Jon. While in Jon's living room, Defendant picked up a gun from Jon's coffee table which he thought "looked cool." As Defendant was inspecting Jon's gun, Beth became nervous and pointed a gun at Defendant. Defendant then threatened to shoot Beth if Beth did not put her gun down. Beth put down her gun, and Defendant turned to leave. As Defendant was leaving, Jon shot at Defendant. Fearing for his life, Defendant returned fire, intending to shoot Jon but not intending to shoot Beth. Some of Defendant's return fire killed Jon and injured Beth.
Defendant was tried for killing Jon and for assaulting Beth. The jury was instructed on the doctrine of "transferred intent." The jury was also instructed on "self-defense" as to the murder charge but not the assault.
For Jon's death, the jury indicated on the verdict sheet that it had found Defendant guilty of both first-degree felony murder (based on the felony of AWDWIKISI) and of second-degree murder. Based on this verdict, the trial court entered judgment convicting Defendant of the greater charge, first-degree felony murder.
For the assault on Beth, the jury found Defendant guilty of AWDWIKISI. The trial court entered judgment based on this verdict.
The trial court sentenced Defendant to life imprisonment without parole. Defendant timely appealed.
*481 II. Analysis
Defendant argues that the trial court committed four errors. We conclude that, except with respect to error in the jury instruction, the trial court did not commit reversible error, as explained in Section II. A. below.
We conclude that the trial court did commit reversible error in its jury instructions resulting in Defendant's convictions for the assault of Beth and the first-degree felony murder of Jon. However, we conclude that the error did not affect the jury's verdict that Defendant had committed second-degree murder when he shot Jon. Accordingly, for the reasons stated in Section II. B. below, we vacate the judgments entered *635 convicting Defendant of assault and first-degree felony murder and remand for a new trial on the assault charge for the assault on Beth and for entry of judgment for second-degree murder for the death of Jon.
A. Defendant's Arguments Concerning Closing Argument and Evidence
Defendant makes three arguments, unrelated to the jury instructions, which we conclude do not warrant relief on appeal. We address each in turn.
1. Prosecutor's Closing Argument
Defendant argues that the trial court failed to intervene ex mero motu concerning two statements made by the prosecutor during closing arguments.
Defendant complains of the prosecutor's statement that "[t]he reason we're here [is that] the defendant will not accept responsibility for his actions." Defendant argues that "[t]he prosecutor's statement invited the jury to hold against [Defendant] his invocation of his constitutional right to plead not guilty and to stand trial before an impartial jury." Our Supreme Court, however, has held that constitutional arguments regarding closing instructions which are not objected to are waived:
Defendant seeks a new trial on the ground that the court's errors [in not intervening ex mero motu during the prosecutor's closing based on the State and Federal constitutions and on N.C. Gen. Stat. § 15A-1230 ].
Because defendant did not object to any of these arguments below, no constitutional argument could have been presented to the trial court. As noted above, failure to raise a constitutional issue at trial generally waives that issue for appeal. [Citations omitted.] Accordingly, we will review these purported errors for a violation of N.C.G.S. § 15A-1230.
State v. Phillips , 365 N.C. 103, 135, 711 S.E.2d 122, 145 (2011).
Here, Defendant did not object to the prosecutor's statement. Therefore, we are compelled to conclude that Defendant has failed to preserve any constitutional argument concerning the prosecutor's statement. And unlike the defendant in Phillips , Defendant here has not made any argument under N.C. Gen. Stat. § 15A-1230. Further, we conclude that any error in this regard did not amount to plain error. Therefore, Defendant's argument concerning this statement is overruled.
*636 Defendant also complains of the prosecutor's statement that "[p]erhaps [Defendant] had [the weapon] in some other robbery [and] discharged it then." This statement suggests that Defendant may have committed another offense, though there is no evidence that he had done so. The State contends the statement was relevant to the prosecution's theory that Defendant had disposed of the weapon shortly after the shooting, which was evidence of Defendant's guilt.
Defendant did not object to the statement. Where there is no objection, our standard of review is whether the remarks were "so grossly improper that the trial court committed reversible error by failing to intervene ex mero motu ." State v. Trull , 349 N.C. 428, 451, 509 S.E.2d 178, 193 (1998).
We have reviewed the prosecutor's statement in context with the entire closing argument, and we conclude that the statement, if improper, was not so grossly improper to require intervention by the trial court. In so holding, we note other cases where similar or more inflammatory statements were held not to require intervention by the trial court. See, e.g., State v. Marino , 229 N.C. App. 130, 135, 747 S.E.2d 633, 637 (2013) (holding that a *482 prosecutor's speculation "that this was not the first time defendant had driven impaired," while improper, did not warrant a new trial). See also State v. Oxendine , 330 N.C. 419, 423, 410 S.E.2d 884, 886 (1991). Therefore, we conclude that the trial court did not commit reversible error by failing to intervene ex mero motu during the prosecutor's closing argument.
2. Evidence Concerning Character of the Victim
Defendant argues that the trial court erred in excluding evidence that the deceased victim (Jon) was a gang leader, had a "thug" tattoo, and had previously been convicted of armed robbery. Defendant contends that he had offered this evidence to show Jon's violent character which would be relevant to his self-defense argument. Defendant argues that the evidence was admissible under Rules 404(a) and 405(b) of our Rules of Evidence and that the trial court's refusal violated his constitutional right to present his defense.
Rule 404(a) provides that an accused may offer evidence of "a pertinent trait of [the victim's] character." N.C. Gen. Stat. § 8C-1, Rule 404(a) (2017). Our Supreme Court has stated that a defendant claiming self-defense "may produce evidence of the victim's character tending to show [ ] that the victim was the aggressor" and may be done so "through testimony concerning the victim's general reputation for violence[.]" State v. Corn , 307 N.C. 79, 85, 296 S.E.2d 261, 265-66 (1982).
*637 Rule 405 of our Rules of Evidence provides how character evidence may be offered. N.C. Gen. Stat. § 8C-1, Rule 405 (2017). Rule 405(a) states that evidence concerning the victim's reputation may be offered. Id. Rule 405(b) states that evidence concerning "specific instances of [the victim's] conduct" may be offered. Id. Defendant specifically argues that his evidence concerning Jon's character was admissible under Rule 405(b) ; he makes no argument under Rule 405(a).
We conclude that the evidence concerning Jon's gang membership, his possession of firearms, and his tattoo do not involve "specific instances of conduct" admissible under Rule 405(b). Therefore, we conclude that the trial court did not err by excluding this evidence. Further, we note that there was evidence presented to the jury that Jon was a drug dealer and possessed multiple guns in his residence at the time of the shooting.
Regarding the victim's prior conviction for armed robbery, the trial court specifically ruled that the evidence was inadmissible under Rule 403, based on its conclusion that unfair prejudice outweighed the probative value of the evidence. State v. Coffey , 345 N.C. 389, 404, 480 S.E.2d 664, 673 (1997) (stating that the trial court may still exclude otherwise admissible evidence if it determines that "its probative value [is outweighed by] the danger of unfair prejudice"). Whether otherwise admissible evidence should be excluded under Rule 403 is left to the sound discretion of the court. State v. Hoffman , 349 N.C. 167, 184, 505 S.E.2d 80, 90-91 (1998). Here, Defendant has made no argument that the trial court erred in excluding Jon's prior conviction under Rule 403. Therefore, we conclude that Defendant failed to meet his burden on appeal as to this issue.
3. Detective's Opinion Testimony
Defendant argues that the trial court committed plain error by allowing a detective testifying for the State to express his "opinion [that Defendant] had already confessed to felony murder." Our Supreme Court has stated that it reviews "unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." State v. Gregory , 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996). Under Rule 10(a)(4) of our Rules of Appellate Procedure, an appellant must demonstrate that a "judicial action" amounted to error. Presumably, here, Defendant is arguing that the trial court should have intervened to strike the detective's testimony concerning his belief that Defendant had confessed to felony murder. Assuming, arguendo , that the trial court committed error, we conclude *638 that the argument is moot in light of our reversal of Defendant's felony murder conviction, as explained in Section II. B. below. Further, assuming that the argument is not moot, we conclude that any error by the trial court was not "so basic, so prejudicial, so lacking in its elements that justice *483 cannot have been done," and, therefore, did not rise to the level of plain error. State v. Odom , 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).
B. Jury Instructions on "Transferred Intent" and "Self-Defense"
We conclude that the jury instructions require us to vacate Defendant's convictions for the assault of Beth and the first-degree felony murder of Jon, but not for the jury's verdict finding Defendant guilty of the second-degree murder of Jon. But before discussing our conclusions regarding the jury instructions as to each charge specifically, we first discuss generally the "transferred intent" and "self-defense" instructions given to the jury.
1. Transferred Intent
The trial court gave a general instruction on "transferred intent." Our Supreme Court has described transferred intent as follows:
It is an accepted principle of law that where one is engaged in an affray with another and unintentionally kills a bystander or a third person, his act shall be interpreted with reference to his intent and conduct towards his adversary. Criminal liability, if any, and the degree of homicide must be thereby determined. Such a person is guilty or innocent exactly as [if] the fatal act had caused the death of his adversary. It has been aptly stated that "The malice or intent follows the bullet."
State v. Wynn , 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971).[2] Therefore, under the "transferred intent" rule, if a defendant shoots at A in the heat of passion, without malice, but hits B, he is guilty of voluntary manslaughter. If he shoots A in self-defense but hits B, he is not guilty by reason of self-defense.
The instruction regarding transferred intent given in this case was an accurate statement of the law. The trial court told the jury:
*639 If the defendant intended to harm one person but instead harmed a different person, the legal effect would be the same as if the defendant had harmed the intended victim.
This instruction, as given, allowed the jury to convict Defendant for killing Jon even if they believed Defendant was intending to shoot Beth when he hit Jon. And it allowed the jury to convict Defendant for assaulting Beth even if they believed Defendant was intending to shoot Jon when he hit Beth.
2. Self-Defense
The State's evidence tended to show that Defendant shot both Jon and Beth during a robbery attempt. Defendant admitted that he shot Jon and Beth, but only to protect himself. Specifically, Defendant testified that (1) Jon shot first; (2) Defendant then returned fire in self-defense as he tried to escape the room in fear that Jon was going to kill him; and (3) Defendant was only trying to hit Jon in his return fire; he was not shooting at Beth.
When instructing on the homicide of Jon, the trial court instructed the jury that it could find Defendant not guilty or guilty of a lesser charge based on self-defense. But the trial court did not instruct the jury on self-defense with respect to the assault on Beth. The instruction on this count, coupled with the transferred intent instruction, created a likelihood of confusion within the jury. Based on our State's jurisprudence, as explained below, the application of self-defense does not turn on whom Defendant actually shot, but rather on whom he intended to shoot. That is, as explained below, Defendant was entitled to a self-defense instruction on the homicide of Jon and the assault of Beth, but only if the jury determined that those crimes were committed with shots intended for Jon.
Defendant was not entitled to any self-defense instruction for the shots which the jury determined he intended for Beth, whether they struck Beth or Jon. Defendant was not so entitled because he testified that he did not intend to hit Beth, but that he was only shooting at Jon. Defendant also testified *484 that he was only in imminent fear of being killed by Jon. He testified that Beth had already put down her gun before he returned fire. See, e.g., State v. Cook , --- N.C. App. ----, ----, 802 S.E.2d 575, 577 (2017), affirmed per curiam , 370 N.C. 506, 809 S.E.2d 566 (2018) (holding that a defendant was not entitled to a self-defense instruction where he testified that he was not intending to shoot the victim when he fired the gun). *640 But based on Defendant's testimony, he was entitled to the self-defense instruction for all the shots he intended to fire at Jon, whether they actually killed Jon or injured Beth . That is, based on Defendant's testimony that Jon was shooting at Defendant, Defendant was entitled to the self-defense instruction with regard to any shots the jury determined he intended for Jon and which hit Jon. And based on the "transferred intent" instruction, Defendant was also entitled to a "self-defense" instruction with regard to any shots intended for Jon but which actually struck Beth.
C. Jury Verdicts and Judgments
1. Count 1-Homicide of Jon
On Count 1, Defendant was charged with Jon's homicide. The trial court instructed the jury on a number of theories, including first-degree felony murder, first-degree premeditation/deliberation murder, second-degree murder, and voluntary manslaughter.
On its verdict sheet, the jury checked boxes indicating that it was finding Defendant guilty of both first-degree felony murder, based on the felony of AWDWIKISI, and of second-degree murder. Based on this verdict (and because Defendant only killed one person), the trial court entered judgment only on the greater charge, first-degree felony murder.
a. First-Degree Felony Murder Judgment-Reversible Error
We conclude that the jury instructions concerning first-degree felony murder based on AWDWIKISI constituted reversible error because the instructions allowed the jury to convict Defendant on this theory even if they believed that Defendant had intended to shoot Jon rather than Beth with the fatal shot(s). Specifically, it would be error for the jury to base its felony murder conviction for the killing of Jon on a felony that Defendant was intending to assault Jon .
Where a defendant intentionally assaults A with a gun which causes A's death (and there is no other felony involved), the State cannot elevate an otherwise act of second-degree murder or voluntary manslaughter to first-degree murder based solely on the fact that the defendant committed the deadly assault with a deadly weapon. Otherwise, every instance where a defendant commits a homicide with a gun would constitute first-degree felony murder.[3]
*641 Based on a holding by our Supreme Court, however, if the jury believed that Defendant intended to shoot Beth with the shot(s) that killed Jon, the jurors were free to convict Defendant of first-degree felony murder based on AWDWIKISI. Specifically, in State v. Terry , our Supreme Court held that a defendant who fires a deadly weapon at A (Beth, in our case), but hits B (Jon), is guilty of first-degree felony murder of B (Jon), based on the fact that the defendant was committing the felony of assault with a deadly weapon on A when he killed B. State v. Terry , 337 N.C. 615, 622, 447 S.E.2d 720, 723-24 (1994). Though this holding seems to be in direct conflict with the "transferred intent" rule stated by our Supreme Court in Wynn , we are bound to follow it.[4]
*485 We, however, cannot determine from the jury instructions or from the verdict sheet whether the jury believed Defendant, when he shot Jon, was intending to shoot Jon or intending to shoot Beth. That is, the instructions did not clearly inform the jury that it could find Defendant guilty of first-degree felony murder based on AWDWIKISI only if it determined that the fatal bullet was meant for Beth. And there was evidence presented from which the jury could have inferred either finding. Therefore, we conclude that the jury instructions with respect to Defendant's conviction for first-degree felony murder constituted reversible error.
b. Second-Degree Murder Verdict-No Reversible Error
In addition to finding Defendant guilty of first-degree felony murder for Jon's death, the jury also found Defendant guilty of second-degree murder. As stated above, the trial court entered judgment only on the first-degree felony murder verdict.
Second-degree murder occurs where a defendant kills another human being with malice. State v. Williams , 288 N.C. 680, 691, 220 S.E.2d 558, 567 (1975). Where the defendant uses a deadly weapon to commit an assault, malice can be presumed.
*642 State v. Lang , 309 N.C. 512, 525-26, 308 S.E.2d 317, 323-24 (1983). "[A] pistol or a gun is a deadly weapon." State v. Benson , 183 N.C. 795, 799, 111 S.E. 869, 871 (1922).
In this case, on the charge of second-degree murder, the jury was instructed on self-defense. We conclude that, for this jury verdict, there was no reversible error. It does not matter whether the jury believed Defendant was shooting at Jon or at Beth when he killed Jon. If the jury believed Defendant was shooting at Jon, the verdict is valid because the jury was given the opportunity to acquit based on self-defense, but declined to do so. And if the jury believed that Defendant shot Jon while trying to shoot Beth, he was not entitled to a self-defense instruction with respect to any shot intended for Beth because he testified that he was not in imminent fear of Beth.
c. Mandate on Homicide Count
We vacate the judgment convicting Defendant guilty of first-degree felony murder. But since there was no reversible error with respect to the second-degree murder verdict, based on the reasoning of our Supreme Court in State v. Stokes , we remand for entry of judgment convicting Defendant of second-degree murder.[5] State v. Stokes , 367 N.C. 474, 479-80, 756 S.E.2d 32, 36 (2014).
2. AWDWIKISI of Beth
The trial court instructed the jury that it could convict Defendant of AWDWIKISI for the injuries to Beth. The trial court did not give an instruction of self-defense as to this charge. This was error because we do not know if the jury determined that the shot that struck Beth was meant for Jon, which may have been legally justified under self-defense, or if it was meant for Beth. That is, with the transferred intent instruction, it is possible that the jury convicted Defendant of AWDWIKISI, though believing that Defendant intended all his shots to hit Jon, as he testified. And based on transferred intent, he should have been acquitted if the jury believed he was firing at Jon in self-defense. As our Supreme Court stated in Wynn with respect to transferred intent: "Such a person is guilty or innocent exactly as [if] the fatal act had caused the death of his adversary." Wynn , 278 N.C. at 519, 180 S.E.2d at 139 (emphasis added).
*643 The State might argue that the failure to instruct on self-defense was not prejudicial because the jury must have determined that Defendant did not shoot at Jon in self-defense based on the finding of guilt for second-degree murder. But this ignores the possibility *486 that the jury found Defendant guilty of second-degree murder for shots intended for Beth, for which he was not entitled to any self-defense instruction, and that the jury found Defendant guilty of assaulting Beth with shots intended for Jon, for which he was entitled to a self-defense instruction. We simply cannot know what the jury was thinking. Therefore, Defendant is entitled to a new trial with respect to the assault charge. On remand, assuming the evidence is the same, the jury must be instructed on self-defense for the shots the jury believed were intended for Jon that hit Beth.
III. Conclusion
The judgments below are vacated. Defendant is entitled to a new trial with respect to the AWDWIKISI conviction. Regarding the first-degree felony murder conviction, we remand for entry of judgment convicting Defendant of second-degree murder.
VACATED AND REMANDED.
Judge INMAN concurs.
Judge STROUD dissents by separate opinion.

Pseudonyms are used to protect the identities of the victims.

This holding in Wynn regarding "transferred intent" was most recently affirmed by our Supreme Court in 1998 in State v. Davis , 349 N.C. 1, 37, 506 S.E.2d 455, 475 (1998) and by our Court just last year in State v. Cox , --- N.C. App. ----, ----, 808 S.E.2d 339, 348 (2017).

If every homicide involving a deadly weapon were elevated in this manner, a defendant who shoots his spouse in the heat of passion, without premeditation and deliberation, would be liable for first-degree felony murder rather than simply voluntary manslaughter. Or a defendant who shoots and kills someone with malice, but without premeditation and deliberation, would still be guilty of first-degree murder rather than second-degree murder. Such results are clearly not the intent of the General Assembly, nor are they reflected in our Supreme Court's jurisprudence.

In Terry , the Supreme Court did not apply its "transferred intent" rule to determine defendant's culpability when he fired at A but shot B. Rather, the Court held that first-degree felony murder was appropriate, notwithstanding whether the defendant shot with premeditation or merely in the heat of passion. Accordingly, it could be argued that Terry conflicts with the statement in Wynn that "the malice or intent follows the bullet."

In Stokes , our Supreme Court cited a line of cases with approval where there was evidence to support a conviction of a greater charge, but the instructions left out an essential element of that greater charge, resulting in an instruction on a lesser charge. State v. Stokes , 367 N.C. 474, 479-80, 756 S.E.2d 32, 36 (2014). The Court held that it was appropriate to remand for entry on the lesser charge. Id.