IN THE SUPREME COURT OF NORTH CAROLINA

No. 11A19

Filed 25 September 2020

STATE OF NORTH CAROLINA

v.

TYLER DEION GREENFIELD


Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 262 N.C. App. 631, 822 S.E.2d 477 (2018), vacating judgments entered on 23 February 2017 by Judge Phyllis M. Gorham in Superior Court, New Hanover County, and remanding for a new trial for the assault with a deadly weapon with intent to kill inflicting serious injury charge and for the entry of a judgment convicting defendant of second-degree murder. On 11 June 2019, the Supreme Court allowed the State's petition for discretionary review. Heard in the Supreme Court on 9 March 2020.

> *Joshua H. Stein, Attorney General, by Teresa M. Postell, Assistant Attorney General, for the State-appellee.*

> *Glenn Gerding, Appellate Defender, by Kathryn L. VandenBerg, Assistant Appellate Defender, for defendant-appellant.*


HUDSON, Justice.

Here, we review (1) whether the trial court erred by failing to give defendant's proposed jury instructions on self-defense and transferred intent with regard to the charge of assault with a deadly weapon with intent to kill inflicting serious injury

against Beth,[1] and (2) whether the trial court's error prejudiced defendant. Because we conclude that defendant was prejudiced by the trial court's failure to give his proposed jury instructions on self-defense and transferred intent in connection with the assault charge, we affirm the decision of the Court of Appeals. However, because we conclude that the proper remedy for this prejudicial error is to remand the case for a new trial on all charges, we affirm in part and reverse in part the decision of the Court of Appeals.

Factual and Procedural Background

On 31 October 2016, a New Hanover County grand jury returned a superseding indictment charging defendant with (1) first-degree murder; (2) attempted first-degree murder; (3) attempted robbery with a dangerous weapon; and (4) assault with a deadly weapon with intent to kill inflicting serious injury.[2] Defendant's trial began on 6 February 2017.

At trial, the evidence showed that on 2 February 2015, defendant arrived with a friend at Jon and Beth's apartment to purchase marijuana from Jon. Subsequent events in the apartment are disputed. However, by the time defendant and his friend left the apartment, Jon was dead and both Beth and defendant had been shot.

---

[1] We use the pseudonyms "Beth" and "Jon" to refer to the victims in this case, just as the Court of Appeals did in its opinion. *State v. Greenfield*, 262 N.C. App. 631, 634 n.1, 822 S.E.2d 477, 479 n.1 (2018).

[2] In this opinion we will refer to this as "the assault" or "the assault charge."

Defendant testified that upon arrival he asked to use the bathroom. Defendant testified that he did not notice a safe in Jon's bedroom or the fact that Beth was asleep as he passed through the bedroom on the way to the bathroom. After using the bathroom, defendant returned to the living room where Jon and defendant's friend were talking. While they were talking, defendant picked up a gun that he found on a coffee table. Defendant testified that he picked the gun up off the coffee table because he thought it "looked like something off a movie" and "it looked cool."

According to defendant, Jon noticed that defendant picked up the gun from the coffee table and "started amping at [him]." Specifically, Jon stood up from where he was seated and started acting "crazy" and "aggressive," asking defendant if he was planning to rob him. Then Beth came out of the bedroom holding a gun up to defendant as if "she just had every intention on shooting [defendant]." Defendant testified that he was "scared" and thought that he was "about to die." Defendant pointed the gun that he picked up from the coffee table at Beth after she pointed her gun at him. Defendant then pointed the gun at Jon because he thought he had "to be as tough as possible to get out of th[e] situation." Defendant shouted "[p]ut the gun down or I'm gonna shoot him in the head." Defendant testified that he only made this threat to get Beth to put the gun down so that he could get out of the apartment.

Eventually, Beth put the gun down on the table and defendant tried to run out of the apartment. As he tried to leave, defendant saw Jon pull a gun from behind his

back and then defendant felt himself get shot in the side. When he got shot, defendant "felt like [he] was going to die" and thought "it was all over" for him.

Defendant testified that after he was shot, he "just started shooting" and pulled the trigger "as many times as [he could] until [he] got to the door." Defendant stated that he was not aiming at anyone in particular, and he was "just . . . shooting and running." However, defendant also testified that he aimed in Jon's direction "as best as [he] could," and that while running he "intentionally" shot at Jon.

At trial, Beth testified for the State. Her account of events inside the apartment diverged from defendant's testimony. Specifically, Beth testified that: Jon's voice got "shaky" after defendant asked to use the bathroom; she did not actually hear defendant use the bathroom; she would have been able to hear defendant use the bathroom from where she was in her and Jon's bedroom; and defendant's path to the bathroom led him right past the safe in the bedroom.

According to Beth, when defendant returned to the living room, she heard his voice become "more aggressive" and Jon's voice become "more shaky and more scared." Beth said that she heard defendant aggressively ask Jon where the guns, money, and drugs were, and then she grabbed a gun located in the bedroom. As she grabbed the gun, a third person that Beth did not recognize entered the apartment carrying a black bag, found Beth in the bedroom, and called out that Beth had a gun. Beth testified that defendant told her to bring the gun into the living room or he

would shoot Jon in the face. Beth entered the living room with her gun pointed down to the ground and placed it on the coffee table.

Beth then stepped between Jon and defendant. Jon attempted to push her away from him as he made a move for the gun that she had just placed on the coffee table. She closed her eyes and turned away as shots came at her from defendant's direction. Beth testified that she felt a pain on the left side of her head and that she saw defendant pointing his gun at her as she was closing her eyes. Beth lost consciousness after she was shot. When she regained consciousness, she saw defendant and the third person running out of the apartment. After attempting to get help from a neighbor, Beth called 9-1-1 and reported that she and Jon were shot during an attempted robbery.

Prior to trial, defendant gave notice to the State that he was planning to offer the affirmative defense of self-defense at trial pursuant to N.C.G.S. § 15A-905(c). At the charge conference, defendant asked the trial court to give an instruction on self-defense for all charges and specifically requested an instruction on "the doctrine of transferred intent as [it] relates to self-defense." Defendant wanted the instruction to "capture the idea that an individual . . . lawfully acting in self-defense who accidentally injures another is entitled to the transference of his intent from his original actions to an innocent bystander." Up until the charge conference, defendant had been referring to the jury instruction as an "accident" instruction, but later explained that he had always intended to request an instruction on self-defense.

Defendant's proposed instruction provided as follows:

> If a defendant, in acting in the lawful exercise of self-defense, injures an innocent bystander while lawfully defending himself, he is excused from criminal liability for any unintentional harm caused to innocent bystanders by his actions in his lawful exercise of self-defense.

The trial court ruled that it would not give defendant's proposed instruction to the jury. Instead, the trial court gave the pattern instruction defining "accident," which provided in pertinent part that

> [a]n injury is accidental if it is unintentional, occurs during the course of lawful conduct, and does not involve culpable negligence. . . . When the defendant asserts the victim's injury was the result of an accident, he is, in effect, denying the existence of those facts which the State must prove beyond a reasonable doubt in order to convict him.

The trial court also gave the following general instruction on transferred intent:

> If the defendant intended to harm one person but instead harmed a different person, the legal effect would be the same as if the defendant had harmed the intended victim.

The trial court also gave a self-defense instruction for first-degree murder under the theory of premeditation and deliberation and its lesser included offenses, but did not give a self-defense instruction for first-degree murder under the felony murder rule or for any underlying felonies, including the assault charge.

The jury ultimately found defendant guilty of first-degree murder based on the felony murder rule with the assault charge as the underlying felony. The jury also found defendant guilty of second-degree murder, but the trial court set that verdict

aside. The jury found defendant not guilty of attempted first-degree murder and attempted robbery with a deadly weapon. Defendant appealed.

The Court of Appeals held in pertinent part that the trial court erred by not instructing the jury on self-defense with regard to the assault charge. *State v. Greenfield*, 262 N.C. App. 631, 642, 822 S.E.2d 477, 485 (2018). Specifically, the Court of Appeals reasoned that based on the evidence at trial, "[d]efendant was entitled to a self-defense instruction on the homicide of Jon and the assault of Beth, but only if the jury determined that those crimes were committed with shots *intended* for Jon." *Id.* at 639, 822 S.E.2d at 483. The Court of Appeals determined that defendant was not entitled to a self-defense instruction for any shots intended for Beth because "[defendant] testified that he did not intend to hit Beth, but that he was only shooting at Jon. Defendant also testified that he was only in imminent fear of being killed by Jon. He testified that Beth had already put down her gun before he returned fire." *Id.* at 639, 822 S.E.2d at 483–84.

The court concluded that the trial court's failure to give a self-defense instruction for the assault of Beth was prejudicial error, reasoning that it did

> not know if the jury determined that the shot that struck Beth was meant for Jon, which may have been legally justified under self-defense, or if it was meant for Beth. . . . And based on transferred intent, he should have been acquitted if the jury believed he was firing at Jon in self-defense.

*Id.* at 642, 822 S.E.2d at 485.

In addition to remanding the case for a new trial on the assault charge, the Court of Appeals vacated the judgment convicting defendant of first-degree murder under the felony murder rule. *Id.* at 643, 822 S.E.2d at 486. The Court of Appeals then remanded the case for the entry of a judgment convicting defendant of second-degree murder, concluding that even though the trial court arrested judgment on that conviction, there was no reversible error as to that verdict because the jury was instructed on self-defense for that charge. *Id.* at 643, 822 S.E.2d at 485–86.

The dissenting judge agreed with the majority's decision to grant a new trial on the assault charge but would have granted a new trial to defendant on all charges because "it [was] not possible to separate the [assault] conviction from the tangled mess of theories and charges." *Id.* at 643, 822 S.E.2d at 486 (Stroud, J., dissenting).

Defendant appealed on the basis of the dissenting opinion. We also allowed the State's petition for discretionary review. Accordingly, we now analyze (1) whether the Court of Appeals erred by concluding that defendant was prejudiced by the trial court's failure to give his proposed self-defense and transferred-intent instructions on the assault charge; and (2) whether the Court of Appeals erred by failing to order a new trial on all charges. Because we conclude that the failure to give the proposed instructions prejudiced defendant and that he should receive a new trial on all charges, we affirm in part and reverse in part the decision of the Court of Appeals.

Analysis

I.     Standard of Review

"This Court reviews the decision of the Court of Appeals to determine whether it contains any errors of law." *State v. Golder*, 374 N.C. 238, 244, 839 S.E.2d 782, 787 (2020) (quoting *State v. Melton*, 371 N.C. 750, 756, 821 S.E.2d 424, 428 (2018)); *see* N.C. R. App. P. 16(a). "To resolve whether a defendant is entitled to a requested instruction, we review de novo whether each element of the defense is supported by the evidence, when taken in the light most favorable to defendant." *State v. Mercer*, 373 N.C. 459, 462, 838 S.E.2d 359, 362 (2020) (quoting *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988)). Further, "[w]hether a jury instruction correctly explains the law is reviewable de novo." *Piazza v. Kirkbride*, 372 N.C. 137, 187, 827 S.E.2d 479, 510 (2019).

II.     Defendant's Proposed Instructions

We conclude that defendant presented sufficient evidence to require a self-defense instruction on the assault charge for any shot intended for Jon.[3] Accordingly, the trial court erred by not instructing the jury according to defendant's proposed self-defense and transferred-intent instructions.

"[W]here competent evidence of *self-defense* is presented at trial, the defendant is entitled to an instruction on this defense, as it is a substantial and essential feature

---

[3] Because this conclusion is sufficient to demonstrate the trial court's error, we do not reach the issue of whether defendant was entitled to a self-defense instruction for any shots he intended for Beth.

of the case, and the trial judge must give the instruction even absent any specific request by the defendant." *State v. Morgan*, 315 N.C. 626, 643, 340 S.E.2d 84, 95 (1986) (citations omitted).

Perfect self-defense requires that at the time of defendant's use of force

> (1) it appeared to defendant and he believed it to be necessary to kill [or use force against] the [victim] in order to save himself from death or great bodily harm; and
> (2) defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and
> (3) defendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and
> (4) defendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*State v. Harvey*, 372 N.C. 304, 307–08, 828 S.E.2d 481, 483–84 (2019) (quoting *State v. Bush*, 307 N.C. 152, 158–59, 297 S.E.2d 563, 568 (1982)). "In determining whether there was any evidence of self-defense presented, the evidence must be interpreted in the light most favorable to defendant." *State v. Webster*, 324 N.C. 385, 391, 378 S.E.2d 748, 752 (1989) (citing *State v. Gappins*, 320 N.C. 64, 71, 357 S.E.2d 654, 659 (1987)).

According to the doctrine of transferred intent, a defendant "is guilty or innocent exactly as though the fatal act had caused the death of the person intended to be killed. The intent is transferred to the person whose death has been caused."

*State v. Dalton*, 178 N.C. 779, 781, 101 S.E. 548, 549 (1919) (citation omitted). In the

self-defense context specifically, we have stated that

> [i]f the killing of the person intended to be hit would, under all the circumstances, have been excusable or justifiable on the theory of self-defense, then the unintended killing of a bystander by a random shot fired in the proper and prudent exercise of such self-defense is also excusable or justifiable.

*Id.* at 782, 101 S.E. at 549 (citation omitted).

Here, the evidence presented at trial, when interpreted in the light most

favorable to defendant, was sufficient to entitle him to a jury instruction on perfect

self-defense for any shot that he intended for Jon. Specifically, defendant testified

that (1) he only picked up the gun from Jon's coffee table because he thought "it looked

cool" and "like something off a movie"; (2) when Jon noticed that defendant was

holding the gun, Jon got "aggressive" and "crazy"; (3) defendant did not point his gun

at anyone until Beth emerged from the bedroom pointing a gun at him; (4) defendant

was scared and thought he was about to die when Beth pointed the gun at him, and

he thought she had "every intention on shooting [him]"; (5) after Beth put her gun

down, defendant ran for the door to exit the apartment; (6) as defendant was leaving,

he saw Jon pull a gun and defendant felt a shot to his side; (7) defendant thought that

he was going to die; and (8) acting out of fear, defendant resorted to "just shooting

and running" while attempting to aim at Jon "as best as [he] could."

Defendant's testimony, taken in the light most favorable to him, entitled him

to a jury instruction on perfect self-defense. Defendant's testimony, if believed, would

show that (1) he subjectively believed that he was going to die if he did not return fire at Jon; (2) such belief was reasonable given the circumstances; (3) defendant was not the aggressor in that he only picked up the gun because he thought "it looked cool," defendant raised the gun only after Beth pointed a gun at him, and defendant only fired at Jon after Jon shot defendant while he was trying to escape; and (4) defendant did not use excessive force by returning fire at the person he reasonably believed had just shot him.

Further, defendant was entitled to a jury instruction on self-defense through the doctrine of transferred intent for the assault charge based on any injury to Beth. Defendant testified that he "intentionally" shot at Jon after having been shot in the side and thinking that he was about to die. From this testimony, the jury could find that Beth was struck by a bullet intended for Jon that defendant shot in self-defense. Accordingly, in the light most favorable to defendant, he was entitled to have the trial court instruct the jury on self-defense according to his proposed instruction for the assault charge, and the trial court erred by failing to do so.

III.    Prejudice

An error is prejudicial when "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (2019).

Although perfect self-defense is not a direct defense to felony murder, it "may be a defense to the underlying felony, which would thereby defeat the felony murder

charge." *State v. Juarez*, 369 N.C. 351, 354, 794 S.E.2d 293, 297 (2016) (citing *State v. Richardson*, 341 N.C. 658, 668–69, 462 S.E.2d 492, 499 (1995)). Here, the trial court failed to give any self-defense instruction for the assault charge, which we have already concluded was error because defendant's testimony supported such an instruction. We further conclude that such error was prejudicial because it impaired defendant's ability to present his defense to felony murder, and we see a reasonable possibility that had the jury been given a self-defense instruction, a different result would have been reached at trial.

We also conclude that defendant was prejudiced by the trial court's failure to give his specific, proposed instructions on self-defense and transferred intent for the assault charge. Defendant proposed the following instruction:

> If a defendant, in acting in the lawful exercise of self-defense, injures an innocent bystander while lawfully defending himself, he is excused from criminal liability for any unintentional harm caused to innocent bystanders by his actions in his lawful exercise of self-defense.

This instruction, if given, would have properly informed the jury that if it determined that defendant intentionally shot at Jon in self-defense and unintentionally shot Beth while exercising that right of self-defense, then his self-defense justification for shooting at Jon would have transferred along with the bullet that unintentionally struck Beth. Further, because perfect self-defense can serve as a defense to the underlying felony for felony murder, and thereby defeat the felony murder charge, there is a "reasonable possibility" that if the trial court had given defendant's

proposed self-defense and transferred-intent instructions, the jury would have acquitted him of both the assault charge and the felony murder charge for which the assault served as the underlying felony.

The State's argument that defendant was not prejudiced by the trial court's failure to give defendant's proposed self-defense and transferred-intent instructions is not persuasive.

First, the State argues that the trial court's general instruction on transferred intent adequately informed the jury that it could acquit defendant if it determined that defendant unintentionally shot Beth while aiming for Jon in self-defense. But the transferred-intent instruction only informed the jury that defendant's intent to harm would transfer; it did not inform the jury that defendant's lawful exercise of self-defense could transfer. It also seems unlikely that the jury would have understood by this general instruction that defendant's self-defense justification would have transferred to any bullet that unintentionally struck Beth when the trial court gave no self-defense instruction at all for the assault charge.

Second, the State argues that defendant could not have been prejudiced by the trial court's failure to give his proposed instructions because defendant invited any error here by requesting the "accident" instruction that *was* given to the jury on the assault charge. *See* N.C.G.S. § 15A-1443(c) ("A defendant is not prejudiced by the granting of relief which he has sought or by error resulting from his own conduct."). But defendant's success in obtaining an instruction on the accident defense does not

preclude his claim that he was prejudiced by the trial court's failure to also give separate, requested instructions on self-defense and transferred intent.[4] This is especially clear because defendant clarified at the charge conference that he had always been requesting self-defense and transferred-intent instructions, and that he had been using the term "accident" somewhat inartfully to refer to those instructions. When defendant made this clarification, the trial court agreed that the issue had always been about self-defense.

Finally, the State argues that defendant cannot demonstrate prejudice resulting from the trial court's failure to give his proposed instructions because the jury's verdict finding defendant guilty of second-degree murder shows that it did not believe that defendant acted in perfect self-defense. However, as explained below, we conclude that the second-degree murder verdict sheds no light on the jury's deliberations concerning defendant's self-defense claim.

---

[4] There is a clear distinction between a pure accident defense and a self-defense via transferred-intent defense: a pure accident defense negates the elements of assault, whereas a self-defense instruction provides a justification for actions that would otherwise satisfy the elements of the offense. *See* N.C.P.I.—Crim. 307.10 (2019) ("When the defendant asserts that the victim's death was the result of an accident he is, in effect, *denying the existence of those facts which the State must prove* beyond a reasonable doubt in order to convict him." (emphasis added)); *State v. Riddick*, 340 N.C. 338, 341, 457 S.E.2d 728, 730 (1995) (quoting N.C.P.I.—Crim. 307.10 (1986)); *State v. Holland*, 193 N.C. 713, 718, 138 S.E. 8, 10–11 (1927) ("The first law of nature is that of self-defense. The law of this state and elsewhere recognizes this primary impulse and inherent right. One being without fault, in defense of his person, in the exercise of ordinary firmness, has a right to invoke this law and kill his assailant, if he has reasonable ground for believing or apprehending that he is about to suffer death or great or enormous bodily harm at his hands. . . . but there must be reasonable ground for the belief or apprehension—an honest and well-founded belief or apprehension at the time *the homicide is committed*." (emphasis added) (citations omitted)).

Accordingly, we conclude that defendant was prejudiced by the trial court's failure to give defendant's proposed instructions on self-defense and transferred intent for the assault charge.

IV.    Remand Order

We conclude that the Court of Appeals erred by remanding this case for the entry of a judgment convicting defendant of second-degree murder. Instead, we remand this case for a new trial on all charges.

The trial court accepted the jury's verdicts finding defendant (1) guilty of first-degree murder under the felony murder rule based upon assault; (2) not guilty of attempted first-degree murder; (3) not guilty of attempted robbery with a deadly weapon; and (4) guilty of assault with a deadly weapon with intent to kill inflicting serious injury. Then, after noticing that the jury failed to mark the verdict sheet under the premeditation and deliberation theory of first-degree murder, the trial court called the members of the jury back into the courtroom and instructed them to continue deliberations on the theory of premeditation and deliberation in the following manner:

> Under Count 1 of the verdict form, there were two first-degree murder charges listed. It appears that you marked one for the first-degree murder under the felony murder rule but nothing was checked under first-degree murder with premeditation and deliberation.
>
> So what I'm going to have y'all do is go back into the jury room and make a decision about the first-degree murder

with premeditation and deliberation, because nothing was checked as to that count; do you understand?

Later the trial court provided the following instruction:

> Out of an abundance of caution, I want to make sure you understand that, of course, there were two theories in the first-degree murder. You made a decision under the first theory, felony murder rule. The second theory is first-degree murder with premeditation and deliberation. So there's first-degree murder, second-degree murder, voluntar[y] manslaughter, or not guilty. That's the decision you have to make on that second one. You have those four options; do you understand that?

After hearing this instruction, the jury asked the trial court the following:

> [W]hy [does] it matter[ ] that we address both theories since it's for the same count? Why is there and/or instead of an and in the charge sheet?

In response to the jury's question, the trial court gave the following instruction:

> Ladies and gentlemen, as I instructed you if you read the instructions, the defendant is charged with first-degree murder. The State presented two theories of first-degree murder to you that required different elements to be proven. First-degree murder under the felony murder rule is one way first-degree murder can be proven, the second way is first-degree murder with premeditation and deliberation. So both theories of first-degree murder were presented to you; therefore, you have to—to look at both theories as they're set out in the charge conference and in the charge instructions and on the verdict sheet and make a decision about both theories in this case.

Following this instruction, one juror asked whether the jury's decision on the two theories had to be "congruent" or "together in order to say first-degree felony murder."

The trial court responded that the jury "ha[s] to make a decision about both. They have to be consistent."

After the jury finished its second round of deliberations, it returned verdicts finding defendant (1) guilty of first-degree murder under the felony murder rule based upon assault; (2) guilty of second-degree murder; (3) not guilty of attempted first-degree murder; (4) not guilty of attempted robbery with a deadly weapon; and (5) guilty of assault with a deadly weapon with intent to kill inflicting serious injury.

We conclude that the trial court's failure to give any instruction on self-defense pertaining to the assault charge prevented the jury from performing its fundamental task of considering all of the substantial and essential features of the case, which prejudiced defendant.[5] Specifically, the trial court instructed the jury that it had to redeliberate on first-degree murder under the theory of premeditation and deliberation, and the trial court informed the jury that it only had "four options," which were to find defendant guilty of "first-degree murder, second-degree murder, voluntar[y] manslaughter, or not guilty." In so limiting the jury's options, the trial court denied it the ability to fully and properly consider whether defendant was guilty of first-degree murder under the felony murder rule.

---

[5]*See State v. Sargeant*, 206 N.C. App. 1, 14, 696 S.E.2d 786, 795 (2010) (holding that the trial court "intru[ded] into the province of the jury" when it accepted partial verdicts and sent the jury back to deliberate with incomplete instructions on aspects of first-degree murder).

Further, when asked whether the jury's verdict on first-degree murder under the felony murder rule and its verdict on first-degree murder under the theory of premeditation and deliberation needed to be "congruent," the trial court instructed the jury that the two findings needed to be "consistent." Under that instruction, the jury could have improperly found defendant guilty of second-degree murder because it thought, for example, that although there was no evidence that defendant intended to shoot Jon with premeditation and deliberation—it needed to at least convict him of second-degree murder in order to render a verdict that was "consistent" with the guilty verdict that the trial court had already accepted. Under such a line of reasoning, the jury would not have engaged at all with defendant's claim of perfect self-defense. Moreover, such a decision by the jury would not have been based upon a proper consideration of the elements of the crime of second-degree murder.

The trial court's decision to have the jury continue deliberations on first-degree murder under the theory of premeditation and deliberation after accepting a partial verdict on first-degree murder under the felony murder rule could have resulted in an improper conclusion by the jury that defendant was guilty of second-degree murder. Therefore, we reverse the decision of the Court of Appeals to remand this case for the entry of a judgment convicting defendant of second-degree murder. Instead, we remand for a new trial on all charges.

Conclusion

We conclude that the trial court erred by failing to give defendant's proposed instructions on self-defense and transferred intent for the assault charge, that such error prejudiced defendant, and that the trial court's decision to take a partial verdict on the first-degree murder charge could have resulted in an improper finding by the jury that defendant was guilty of second-degree murder. Accordingly, we affirm in part, reverse in part, and remand this case to the trial court for a new trial on all charges.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

Justice NEWBY dissenting.

A criminal defendant is entitled to a fair trial, free from prejudicial error. Here the trial court gave adequate instructions, enabling defendant to present his defense theory to the jury. Defendant argued that he was aiming at Jon and shot Beth by accident. He asserted that his shooting Jon was justified as self-defense, and thus his shooting Beth was also justified. By its verdict it is clear that the jury considered and rejected defendant's argument. Because the instructions given to the jury allowed the jury to fully consider defendant's defense, his conviction should be upheld. I respectfully dissent.

Following a three-week trial, during which both defendant and the surviving victim testified, the jury heard differing accounts of a drug deal gone wrong that undisputedly resulted in the death of Jon and the serious injury of Beth. While previously having given various accounts, by the time defendant testified he claimed that he shot Jon in self-defense and that Beth was "just in his area" when he was shooting at Jon. It is undisputed that the first person to pick up a gun was defendant and that he was the only one holding a gun when the violent affray began. Likewise, Jon's cell phone undisputedly captured defendant's threats and demands at the time he was holding the gun.

The jury heard evidence that defendant was the initial aggressor and that his actions were intentional, including that he intentionally shot Beth. Defendant

entered the home to purchase drugs, picked up a gun and held it in close proximity to Jon, threatened Jon, and threatened to take Jon's life to convince Beth to put her gun down. A recording on Jon's cell phone captured the exchange that occurred after defendant picked up the gun, including defendant's voice demanding "the money" from Jon, threatening to "shoot [Jon] in the head," and demanding that Beth "[b]ring the gun here[, p]ut it down." Beth complied and stood in front of Jon. Beth saw defendant still pointing his gun at her as she closed her eyes.

Beth did not see the gun fire the shots, but she heard two to three shots, smelled gun powder, and felt the bullet strike her. Beth "felt pain on the left side of [her] head" and felt the bullets penetrating her as she went unconscious. When she regained consciousness, she saw her "hair floating around" her and on her arms and felt a pain on the left side of her head. She then saw defendant running out of the home. Following his flight and during the investigation, defendant gave different explanations about how the drug deal at Jon's house had gone wrong and how defendant got shot. Defendant's rendition of the facts varied as to who fired first and who got shot first. By the time defendant testified, he claimed he shot Jon in self-defense and that Beth was "just in his area" when he was shooting at Jon.

At the charge conference, defendant asked for jury instructions on self-defense and transferred intent. He wanted to present to the jury the argument that if he was justified in shooting Jon in self-defense, he was also justified in shooting Beth accidently. The trial court gave a self-defense instruction and an instruction on

accident as well as a general transferred-intent instruction, but did not give the specific transferred-intent instruction requested. Nonetheless, with the jury instructions given, defendant was able to make the jury argument he desired.

Defendant's defense theory was that he fired every shot in self-defense to ward off Jon's aggression and that any shots that hit Beth did so by accident or unintentionally. Defense counsel clearly recapped defendant's theory in his closing argument as follows:

> [Defendant] was acting in self-defense when he pulled the trigger and those bullets came out of the gun firing at [Jon] so he would not die, then it's going to be not guilty the whole way down. Similar principles. Not exactly self-defense but very similar in their nature and application.
>
> . . . .
>
> [I]f you believe [defendant's] story that he wasn't there to rob anybody and that he acted in self-defense, really you don't have any choice in this case, you have to cut this kid loose.
>
> . . . .
>
> [F]or accident . . . . if you guys determine that his shooting at [Jon] was the lawful exercise of self-defense, then the bullets that came out of that gun were done lawfully, and that it would be considered an accident as the definition of the law, not that it was an actual accident, but otherwise lawful conduct is covered under this defense of accident.
>
> It's important this concept is clear, that if you believe that when he pointed that gun—when [defendant] pointed that gun at [Jon], that he did so lawful—that he did so in self-defense, that the fact that those bullets may have hit an innocent bystander, or [Beth], that his belief

that he was acting in reasonable—that he was acting in self-defense would be covered under the accident instruction, that lawfully shooting at someone in self-defense covers unintended victims. That's the law, and it's important that you understand it.

The jury found defendant guilty of murder under the felony murder rule, with the underlying felony being the assault on Beth, and of second-degree murder. The jury verdict could have two meanings, both of which show that the jury rejected defendant's defense. The jury could have believed that defendant intended to shoot Beth. The jury also could have believed that defendant intended to shoot Jon, and hit Beth by accident, but that defendant did not shoot Jon in self-defense.

It is a well-established principle in this jurisdiction that in reviewing jury instructions for error, they must be considered and reviewed in their entirety. Where the trial court adequately instructs the jury as to the law on every material aspect of the case arising from the evidence and applies the law fairly to variant factual situations presented by the evidence, the charge is sufficient.

*Murrow v. Daniels*, 321 N.C. 494, 497, 364 S.E.2d 392, 395 (1988) (citing *Gregory v. Lynch*, 271 N.C. 198, 203, 155 S.E.2d 488, 492 (1967); then citing *King v. Powell*, 252 N.C. 506, 114 S.E.2d 265 (1960)). Here the jury received instructions that adequately instructed as to the law and on every material aspect of the case arising from the evidence, including defendant's defense theory. Any alleged deficiency in the jury instructions would be harmless.

The trial court instructed the jury on the homicide charges lodged against defendant for the fatal shooting of Jon: first-degree murder based upon malice,

premeditation and deliberation, or the felony murder rule; second-degree murder; and voluntary manslaughter. As instructed, first-degree murder and second-degree murder both involve an intentional and unlawful killing with malice. The trial court defined malice to mean "not only hatred, ill will or spite, as it is ordinarily understood, but also . . . a condition of mind which prompts a person to intentionally take the life of another or to intentionally inflict serious bodily harm that proximately results in another person's death without just cause, excuse, or justification." As the trial court instructed,

> to find the defendant guilty of second-degree murder, the State must prove beyond a reasonable doubt that the defendant unlawfully, intentionally and with malice wounded the victim with a deadly weapon proximately causing the victim's death. The State must also prove that the defendant did not act in self-defense, or if the defendant did act in self-defense, the State must prove that the defendant was the aggressor in provoking the fight with intent to kill or inflict serious bodily harm.

Voluntary manslaughter, the last homicide option given to the jury, is an unlawful killing that is still intentional but does not require malice or premeditation and deliberation and instead applies when "the defendant acts in the heat of passion based upon adequate provocation." As stated in the jury instruction, a conviction on voluntary manslaughter may indicate that the jury found that defendant killed in self-defense "but use[d] excessive force under the circumstances or was the aggressor without murderous intent in provoking the fight in which the killing took place." The trial court specifically instructed the jury that "if the State proves beyond a

reasonable doubt that the defendant, though otherwise acting in self-defense, was the aggressor, though the defendant had no murderous intent when the defendant entered the fight, the defendant would be guilty of voluntary manslaughter."

Based on defendant's testimony that he shot Jon in self-defense, the trial court instructed the jury on self-defense as to all homicide charges that involved his intent towards Jon as follows:

> The defendant would be excused . . . if, first, the defendant believed it was necessary to kill the victim in order to save the defendant from death or great bodily harm.
>
> And second, the circumstances as they appeared to the defendant at the time were sufficient to create such a belief in the mind of a person of ordinary fitness.
>
> In determining the reasonableness of the defendant's belief, you should consider the circumstances as you find them to have existed from the evidence . . . .

The trial court specifically instructed that "[t]he defendant would not be guilty of any murder or manslaughter if the defendant acted in self-defense and if the defendant was not the aggressor in provoking the fight and did not use excessive force under the circumstances."

The trial court then described in detail the definition of "aggressor" for the jury, stating that in order for the jury

> to find the defendant guilty of first-degree murder or second-degree murder, the [S]tate must prove beyond a reasonable doubt, among other things, that the defendant did not act in self-defense or, failing in this, that the

> defendant was the aggressor with the intent to kill or to inflict serious bodily harm upon the deceased.

The trial court reiterated that, "[i]f the State fails to prove the defendant did not act in self-defense or was the aggressor[,] . . . you may not convict the defendant of either first-degree or second-degree murder." The trial court repeated the jury's option to choose not guilty on all intentional homicide charges if defendant acted in self-defense and was not the aggressor. Defendant still could be convicted of voluntary manslaughter if he, though otherwise acting in self-defense, was the aggressor.

The jury, however, found defendant guilty of second-degree murder, indicating that defendant unlawfully killed Jon with malice and did not act in self-defense. Otherwise, if the jury believed that defendant acted in self-defense, the jury would have chosen not guilty of any murder or voluntary manslaughter.

The jury also found defendant guilty of murder under the felony murder rule. To convict a defendant of first-degree murder on the theory of felony murder, the jury must find, *inter alia*, that the defendant killed the victim while committing or attempting to commit a felony; here the underlying felony was the independent assault on Beth, which the jury found to be assault with a deadly weapon with intent to kill inflicting serious injury. To find defendant guilty of this assault, the jury was instructed that defendant must have "assaulted the victim by intentionally and without justification or excuse shooting [Beth] in the head and arm." This type of assault requires "the specific intent to kill" and includes an attempt to kill the victim

by an intentional shot. Within the felony murder rule instruction, the trial court informed the jury that the required intent "may be inferred by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw." Of the assault options, the jury convicted defendant of assault with a deadly weapon with intent to kill inflicting serious injury of Beth even though the jury could have chosen an assault that does not require a specific intent to kill, such as assault with a deadly weapon inflicting serious injury. Since Beth was undisputedly unarmed at the time of the shooting, defendant has no viable self-defense claim against Beth. This assault conviction becomes the underlying basis for murder under the felony murder rule.

Given defendant's testimony that he accidently shot Beth when shooting at Jon because she was "just in his area," at defendant's request, the jury received an "accident" defense instruction on the assault charge. This instruction stated that "[a]n injury is accidental if it is unintentional, occurs during the course of lawful conduct, and does not involve culpable negligence." The accident instruction required the jury to consider whether defendant *unintentionally* shot Beth. As summarized in defense counsel's jury argument, defendant's theory that he intended to shoot Jon in self-defense and that Beth was simply collateral damage is practically speaking the same argument regardless of whether that claim is categorized as accidently arising out of self-defense or simply an accident.

As the trial court instructed, the State bore the burden to prove "beyond a

reasonable doubt that the victim's injury was not accidental." If it did not satisfy that burden of proof, "it would be [the jury's] duty to return a verdict of not guilty." If the jury believed that defendant *unintentionally* shot Beth, it would have found defendant *not* guilty of the intentional assault against Beth, as urged to do by defense counsel during closing argument. The jury was not convinced by the "accident" defense and instead convicted defendant of assault with the specific intent to kill Beth. That verdict indicates that they believed defendant intended to shoot Beth or that defendant's shooting of Jon was unjustified. If the jury believed defendant's theory it would have found him not guilty of all homicide charges and every assault charge. The jury, by finding defendant guilty of both a homicide offense against Jon and the assault against Beth, simply did not believe defendant's theory.

Nonetheless, the majority concludes that the trial court committed prejudicial error when it failed to provide the jury with additional self-defense and transferred-intent instructions for the assault on Beth, and it determines that the jury could have reached a different outcome if given those instructions. In the majority's view, in that different outcome, "perfect self-defense can serve as a defense to the underlying felony for felony murder, and thereby defeat the felony murder charge" and provide "a 'reasonable possibility' that if the trial court had given defendant's proposed self-defense and transferred-intent instructions, the jury would have acquitted him of both the assault charge and the felony murder charge for which the assault served as the underlying felony." In other words, the jury could have concluded that defendant

shot Jon in self-defense and that defendant unintentionally shot Beth while defending himself. This argument is essentially the same argument that defendant presented to the jury at trial, which the jury rejected.

Because it appears that defendant was the aggressor, it appears he may not have been entitled to the self-defense instruction at all. The evidence indicates that defendant undisputedly made threats to kill Jon and, when the violence began, defendant was the only one actually holding a gun. Nonetheless, having received the self-defense instruction, the jury rejected defendant's self-defense argument.

The law limits self-defense protection for aggressors, or those who create the deadly situation by their own doing. If a defendant "by his own wrongful act produces a condition of things wherein it becomes necessary for his own safety that he should take life or do serious bodily harm, . . . the law wisely imputes to him his own wrong, and its consequences to the extent that they may and should be considered in determining the grade of offense which but for such acts would never have been occasioned." *State v. Crisp*, 170 N.C. 785, 792, 87 S.E. 511, 515 (1916) (quoting *Reed v. State*, 11 Tex. App. 509, 518 (1882)).

While defendant's testimony was the only substantiation of his claim of self-defense, his testimony at the same time negated that claim. Defendant went into Jon and Beth's home and picked up a gun which caused Jon to ask defendant if defendant was robbing him. Defendant never answered Jon's question and instead threatened to kill Jon. Beth pointed a gun at defendant. Defendant disarmed Beth by threat

against Jon. It is undisputed that defendant was the only one holding a gun once Beth disarmed herself. It is only thereafter that the facts come into dispute. Based on defendant's own testimony and the testimony of the surviving victim, the jury heard evidence that defendant was the aggressor and did not act in self-defense. Defendant, based on his testimony, nonetheless received the benefit of the self-defense instruction, and the jury considered defendant's intent toward Jon for every crime. The jury instructions sufficiently captured defendant's essential defense theory, which allowed defense counsel to make his argument to the jury.[1]

The jury considered and discredited the essence of defendant's self-defense theory when it convicted him of second-degree murder instead of voluntary manslaughter. The jury simply decided that defendant intended to harm both victims and was not justified in doing so. Thus, the shot fired at Jon was not "in the proper and prudent exercise of such self-defense" and not "excusable or justifiable." *State v. Dalton*, 178 N.C. 779, 782, 101 S.E. 548, 549 (1919) (quoting 13 R. C. L. tit. Homicide, § 50, 745–46). Any random shot that unintentionally killed an innocent bystander was likewise not "excusable or justifiable." *Id.* The jury's outcome is supported by the

---

[1] Even if the shots fired at Jon unintentionally struck Beth, the trial court's general transferred-intent instruction covers shots defendant fired with either criminal intent towards Jon or shots justified in self-defense. *See State v. Dalton*, 178 N.C. 779, 781–82, 101 S.E. 548, 549 (1919); *id.* at 782, 101 S.E. at 549 (The defendant "is guilty *or innocent* exactly as though the fatal act had caused the death of the person intended to be killed. The intent is transferred to the person whose death has been caused." (quoting 13 R. C. L. tit. Homicide, § 50, 745–46) (emphasis added)). Thus, by definition, transferred intent encapsulates a theory of justification like self-defense as well.

evidence presented and, based on the jury's decisions, additional instructions would not have resulted in a different outcome.

As demonstrated by the verdict, the jury simply was not convinced by defendant's testimony that he only intended to shoot Jon and that he shot Jon in self-defense. The jury's guilty verdict on second-degree murder shows that the jury did not find his self-defense claim credible. Similarly, the jury's finding that defendant assaulted Beth with the intent to kill reflects its view that defendant intended to shoot Beth or that defendant's shooting of Jon was unjustified. The jury considered and rejected defendant's defense. His conviction should be upheld. I respectfully dissent.